IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUN, YUCHEN JUSTIN, | ) |
| | ) |
| Plaintiff, | ) C.A. No. |
| | ) |
| v. | ) |
| | ) |
| BLOOMBERG, L.P., and BLOOMBERG, INC., | ) |
| | ) |
| Defendants. | ) |

**DECLARATION OF JUSTIN SUN IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION**

I, Justin Sun, pursuant to 28 U.S.C. § 1746, and under penalty of perjury of the laws of the United States, declare as follows:

1. I am the founder of the TRON public blockchain ("TRON") and Plaintiff in the above-captioned action.

2. I am familiar with the facts as alleged in the Complaint and respectfully submit this Declaration in support of my Motion for a Temporary Restraining Order and a Preliminary Injunction (the "Motion").

3. I make this Declaration based upon my own personal knowledge of the facts set forth herein and, if called upon to testify about the matters contained herein, I could and would competently do so.

4. I have reviewed the Declaration of Sprina Wang submitted with the Motion (the "Wang Declaration").

5. On February 11, 2025, on a WeChat call with Muyao Shen, a Bloomberg reporter, she proactively suggested that I could be featured in the online Bloomberg Billionaires Index (the

"Billionaires Index"). While I was initially interested, given my significant cryptocurrency holdings, I did have concerns regarding the confidentiality and security of my financial records.

6. In February 2025, prior to providing my financial records to Bloomberg, I had multiple conversations with Ms. Shen. During those conversations, I communicated my significant confidentiality and data security concerns. Ms. Shen told me that any information I provided to Bloomberg for the purpose of verifying my personal wealth would be kept strictly confidential and would only be used to verify my personal assets for the Billionaires Index profile.

7. Based on Ms. Shen's representations, it was my understanding that the only information that would be reported about my assets in the Billionaires Index profile was the total aggregate value of my cryptocurrency holdings, along with the general asset types and sources of my wealth. For example, it was my understanding, based on the representations made by Ms. Shen, that all of my cryptocurrency holdings would be reported in a single lump sum amount as "cryptocurrency" holdings. In fact, Ms. Shen represented to me that prior publications only included lump sums and did not contain granular details. I would not have agreed to participate in Bloomberg's Billionaires Index if I had been told that Bloomberg would publish granular details about my cryptocurrency assets, including a breakdown of my cryptocurrency holdings.

8. In considering whether to participate in the Billionaires Index, I reviewed the type of information published in the Billionaires Index to gain an understanding of the level of personal financial information published about the profiled individuals and confirm Ms. Shen's representations. I was concerned about Bloomberg publishing private and confidential information about my personal finances that could be harmful to my personal safety and current business interests if published. Through my review, I gained comfort that the Billionaires Index did not publish details about the holdings of specific cryptocurrencies, and when it published

information about holdings in individual cryptocurrencies, it was nearly exclusively bitcoin, and it based its reporting on public statements or disclosures by the holders about their holdings. I also gained comfort that the Billionaires Index would not publish confidential information or information privately shared; the sources cited for the published information in the Billionaires Index were overwhelmingly from public filings and public statements.

9. Based on my review of the type of information published by the Billionaires Index, I understood that there was a well-established structure to the Billionaires Index including the type of content it published (and at what level of detail) and this gave me comfort that my private personal financial information would not be at risk of exposure. I relied on this understanding as well as Ms. Shen's representations noted above when I agreed to participate in the Billionaires Index and share my information for what I understood to be verification purposes only.

10. My understanding about how my information would be treated by Bloomberg was developed through: (1) my review of the profiles published as part of the Index and the type and level of detail published; (2) my conversations with Ms. Shen and other members of Bloomberg; and (3) repeated written assurances I received from Bloomberg. Those repeated written assurances are detailed in the Wang Declaration. I relied on this understanding when I agreed to participate in the Billionaires Index.

11. On March 27, 2025, I sent the following message to the Bloomberg journalists working on the Billionaires Index profile to further confirm my understanding about how my information would be treated by Bloomberg:

> All information shared within the group is strictly confidential and for verification purposes only. Once the verification is complete, the data must be deleted. The data is solely for verification and may not be used for any other purpose (including reporting). We will not provide any responses beyond the verification service, as that falls entirely outside the scope of simply providing data.

> This asset data is extremely sensitive. The spreadsheet is for verification purposes only and must not be used for any other purpose. Any leakage may result in legal liability, and the data must be deleted. We will not answer any questions regarding these assets. We only provide data to verify authenticity.
>
> Bloomberg must also agree to use the data strictly in accordance with our requirements — for example, to provide only a general assessment or overall valuation based on the data, without making any specific references or detailed reporting on the figures. This data is being provided solely for verification purposes and is not intended for reporting.

12. Bloomberg did not refute or object to my March 27, 2025 message, further confirming that my understanding based on the representations that were made to me by Ms. Shen was accurate.

13. In July 2025, Bloomberg sent its draft valuation to me and members of my team. We recognized errors in the draft valuation and alerted Bloomberg to those errors on multiple occasions. Also, based on my review of the prior publications from the Billionaires Index, the information Bloomberg intended to publish in my profile was far more detailed than the type of information usually published as part of the Bloomberg Billionaires Index, and was contrary to Ms. Shen's representations made via our voice calls, upon which I relied when I agreed to provide my personal information to Bloomberg.

14. I understand that Bloomberg intends to publish its valuation of my personal wealth, which includes holdings of individual cryptocurrencies and information Bloomberg knows to be erroneous and protected by our agreement to maintain as confidential the details of my personal finances.

I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on the 11th day of August 2025.

*Yuchen (Justin) Sun*

3CC3096C36D0C6B55AF895C16400A982    contractworks.

Justin Sun