IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUN, YUCHEN JUSTIN, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. |
| | ) | |
| v. | ) | |
| | ) | |
| BLOOMBERG, L.P., and BLOOMBERG, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF SPRINA WANG IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

I, Sprina Wang, pursuant to 28 U.S.C. § 1746, and under penalty of perjury, declare as follows:

1. I am the Senior Director of Marketing and Operations in support of TRON DAO, which supports the TRON public blockchain ("TRON"), founded by Plaintiff Justin Sun.

2. I am familiar with the facts as alleged in the Complaint and respectfully submit this Declaration in support of Mr. Sun's Motion for a Temporary Restraining Order and a Preliminary Injunction (the "Motion").

3. I make this Declaration based upon my own personal knowledge of the facts set forth herein and, if called upon to testify about the matters contained herein, I could and would competently do so.

4. I have reviewed the Declaration of Justin Sun submitted with the Motion ("Sun Declaration").

5. I was in my current position as Senior Director of Marketing and Operations supporting TRON on February 4, 2025.

1

6. On or around February 4, 2025, I was approached through WeChat by Muyao Shen, a journalist with Bloomberg. Ms. Shen asked for an interview with Mr. Sun. Via WeChat, Ms. Shen and I discussed the potential interview, including the topics that would be covered and timing and logistical issues. Because Forbes was planning a March 2025 cover story on Mr. Sun, Mr. Sun's availability to participate in an interview with Bloomberg was limited. As a result, Mr. Sun decided to defer scheduling an interview with Bloomberg until after the Forbes cover story was published.

7. On February 11, 2025, on a WeChat call, I told Ms. Shen that Mr. Sun needed to defer any interview because of the Forbes cover story. Ms. Shen subsequently suggested that Bloomberg could feature Mr. Sun on the Bloomberg Billionaires Index, which includes profiles of the world's 500 richest people, including general summaries of their wealth.

8. On or around February 26, 2025, I participated in an email conversation ("Email Exchange") with Ms. Shen and Dylan Sloan, a journalist at Bloomberg who compiles net worth estimates for the Bloomberg Billionaires Index. A true and accurate copy of the Email Exchange is attached to this Declaration as **Exhibit A**.

9. On February 27, 2025, I created a Telegram group chat ("Telegram Chat") between myself, Mr. Chung, Mr. Sloan, and Yeowun Park, a Public Relations Lead at Tron and Plaintiff's publicist. On February 28, 2025, Mr. Chung invited Mr. Sun to the Telegram Chat. On March 19, 2025, Mr. Sloan added another Bloomberg journalist, Tom Maloney ("Maloney") to the Telegram Chat. A true and accurate copy of relevant portions from the Telegram Chat is attached to this Declaration as **Exhibit B**.

2

10. Later that same day, Mr. Chung asked Mr. Sloan in the Telegram Chat, "Are there any Security & Privacy policies to prevent data leakage in your/BBG side? If have, Pls let's know the details."

11. Mr. Sloan responded, "Sure. Anytime I'll be accessing the data, it'll be within the Bloomberg office, which is a secure network. We work with Arkham Intelligence for crypto valuations—they have a custom API for us to automate the process of logging historical wallet transactions. My plan was to run the wallet addresses through that[.]"

12. Mr. Chung wrote that "We also hope that only trust & limited people have access right for the documents, which can maximize the protection of our data." Mr. Sloan assured the group "***Yes, definitely***."

13. On March 3, 2025, Mr. Sloan reiterated the security measures in place to protect the privacy of the details of Mr. Sun's personal financial information. He wrote "Arkham Intelligence built a custom API for Bloomberg which allows us to compile data on token transfers and conversions to fiat for the wallet addresses you provided. That API is located on our internal network, meaning the file of Justin's wallet addresses won't leave our office and the only people who have access are my team and the engineers who manage the API (Arkham won't have access)." Mr. Sloan asked: "Are you all OK with that plan as it relates to data security?"

14. On March 27, 2025, Mr. Sun sent the following message to Mr. Sloan and Mr. Maloney to further confirm his understanding about how his information would be treated by Bloomberg:

> All information shared within the group is strictly confidential and for verification purposes only. Once the verification is complete, the data must be deleted. The data is solely for verification and may not be used for any other purpose (including reporting). We will not provide any responses beyond the verification service, as that falls entirely outside the scope of simply providing data.

3

> This asset data is extremely sensitive. The spreadsheet is for verification purposes only and must not be used for any other purpose. Any leakage may result in legal liability, and the data must be deleted. We will not answer any questions regarding these assets. We only provide data to verify authenticity.
>
> Bloomberg must also agree to use the data strictly in accordance with our requirements — for example, to provide only a general assessment or overall valuation based on the data, without making any specific references or detailed reporting on the figures. This data is being provided solely for verification purposes and is not intended for reporting.

15.     Neither Mr. Sloan nor Mr. Maloney refuted or objected to Mr. Sun's March 27, 2025 message, further confirming that Mr. Sun's understanding based on the representations that were made to him by Ms. Shen were accurate.

16.     Bloomberg was made aware, repeatedly, that Mr. Sun valued the privacy of the details of his personal financial information.  I understood from the correspondence detailed in Exhibits A and B that Bloomberg recognized Mr. Sun's privacy concerns and was going to protect the details of his personal financial information from exposure beyond the process of verification, which would occur on a secure network within Bloomberg's office.  I also understood from this correspondence that Bloomberg was going to limit exposure of details of Mr. Sun's personal financial information to only a limited number of trusted people in order to accomplish the verification task.

17.     On July 15, 2025, I became aware that Ms. Shen used Mr. Sun's private personal financial details in a draft profile story and, alarmed, I contacted Mr. Sloan in the Telegram group chat and reminded Mr. Sloan that "these data are strictly confidential and must not be disclosed externally," because "that's not what we have agreed on."

18.     In late July 2025, Bloomberg sent us a draft Billionaire Index profile for Mr. Sun that contained a detailed breakdown of Plaintiff's financial information, including the specific amounts of numerous cryptocurrencies owned by Mr. Sun.

4

19.	I alerted Bloomberg that the data they intended to report about Mr. Sun was incorrect and required revision.

20.	On July 30, 2025, I reiterated to Bloomberg multiple times that the data Bloomberg intended to report about Mr. Sun was incorrect and required revision.

21.	I understand that Bloomberg intends to publish its valuation of Mr. Sun's personal wealth including holdings of individual cryptocurrencies and information Bloomberg knows to be erroneous and protected by Bloomberg's agreement to maintain as confidential the details of Mr. Sun's personal finances.

I hereby declare under penalty of perjury that the foregoing statements made by me are true and correct.

Executed on the 11th day of August, 2025, at Irvine, California, 92618.

_____
Sprina Wang