IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUN, YUCHEN JUSTIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 25-1007 (CFC) ) ) |
| BLOOMBERG, L.P., and BLOOMBERG, INC., | ) **DEMAND FOR JURY TRIAL** ) ) |
| Defendants. | ) ) |

**FIRST AMENDED COMPLAINT**

Plaintiff Yuchen Justin Sun, by and through the undersigned counsel, brings his First Amended Complaint to enjoin Defendants Bloomberg, L.P. and Bloomberg, Inc. from engaging in public disclosure of private facts and for promissory estoppel and in support alleges as follows:

**INTRODUCTION**

1. Plaintiff Yuchen Justin Sun ("Mr. Sun") brings this action to prevent Defendants Bloomberg, L.P. and Bloomberg, Inc. (collectively "Bloomberg" or "Defendants") from recklessly and improperly disclosing his highly confidential, sensitive, private, and proprietary financial information in additional future publications, and to seek the removal of private financial information of Mr. Sun that Bloomberg has already published on its platform where it is accessible to Bloomberg's millions of monthly readers. Mr. Sun will suffer significant and irreparable harm—both financially and physically—if this sensitive financial information is given additional and continued publicity by Bloomberg.

2. Mr. Sun is a successful entrepreneur in the blockchain and cryptocurrency industry. Most notably, Mr. Sun is the founder of TRON, a blockchain protocol that has evolved into one of the most active open blockchain networks in the world with over 300 million accounts. Given

his successful business ventures and holdings, Mr. Sun has accumulated a sizable portfolio of various cryptocurrencies and other valuable assets.

3.      Earlier this year, Mr. Sun was approached by Bloomberg asking whether he would like to be included in Bloomberg's online "Billionaires Index," which is a ranked list of the world's richest people. Bloomberg told Mr. Sun that before he could be included in the Billionaires Index, Bloomberg would need to verify his assets to confirm his net worth.

4.      Prior to agreeing to participate, Mr. Sun received explicit assurances from Bloomberg that his highly confidential, sensitive, private, and proprietary financial information, particularly related to his cryptocurrency holdings, would be held "strictly confidential" and was provided to Bloomberg for the sole purpose of verifying his total net worth. Based on Bloomberg's express promises of confidentiality, as well as a review of other Bloomberg billionaire profiles that include cryptocurrency holdings, which report only a lump sum value of cryptocurrency holdings, Mr. Sun agreed to participate in the Billionaires Index and provide Bloomberg with his sensitive financial information.

5.      Despite its express promise of confidentiality, Bloomberg published Mr. Sun's specific financial holdings—in granular detail—alongside material misstatements about Mr. Sun's holdings and intends to further publicize these holdings in a second publication. Disclosure has already caused harm and continued disclosure will cause further significant harm to Mr. Sun, including but not limited to, an invasion of privacy, as well as subjecting Mr. Sun to a significant risk of theft, hacking, kidnapping, and bodily harm to him and his family.

## PARTIES

6.      Mr. Sun is an individual who resides in Hong Kong.

7. Bloomberg, L.P. is a limited partnership existing under the laws of the state of Delaware with its principal place of business at 731 Lexington Ave, New York, NY 10022.

8. Bloomberg, Inc. is a corporation incorporated in the state of Delaware with its principal place of business at 731 Lexington Ave, New York, NY 10022. Bloomberg Inc. is the parent company of Bloomberg, L.P.

**JURISDICTION AND VENUE**

9. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2).

10. This Court has personal jurisdiction over Bloomberg, L.P., a limited partnership existing under the laws of the state of Delaware.

11. This Court has personal jurisdiction over Bloomberg, Inc., a limited partnership existing under the laws of the state of Delaware.

12. Venue is appropriate under 28 U.S.C. § 1391(b). On information and belief, Defendants reside in this district.

**FACTUAL BACKGROUND**

**A.     Bloomberg Agreed To Maintain the Confidentiality of Plaintiff's Confidential Financial Information.**

13. On or around February 4, 2025, a member of Mr. Sun's team was approached by Muyao Shen, a journalist with Bloomberg, through WeChat. Ms. Shen wanted to schedule an interview with Mr. Sun.

14. However, due to other media commitments, Mr. Sun's availability to participate in an interview with Bloomberg at that time was limited. On February 11, 2025, during a call on WeChat, Mr. Sun's team informed Ms. Shen that Mr. Sun needed to defer any interview because

of other media commitments. Ms. Shen subsequently suggested that Bloomberg could feature Mr. Sun on the Bloomberg Billionaires Index.

15. Bloomberg maintains an online "Billionaires Index," inviting its audience to "[v]iew profiles for each of the world's 500 richest people, see the biggest moves, and compare fortunes or track returns."[1]

16. Mr. Sun was told that in order to be featured in the Billionaires Index, he would need to provide Bloomberg with his financial information regarding the value of specific assets and details related to his ownership of those assets that are highly confidential, sensitive, private, and proprietary information ("Confidential Financial Information") for verification purposes.

17. While initially interested in being featured in the Billionaires Index, Mr. Sun had reservations due to the sensitivity of his substantial cryptocurrency holdings. Mr. Sun was particularly concerned about the confidentiality and security of his Confidential Financial Information, and the potential risks to his personal safety and business interests if Bloomberg were to disclose those details publicly.

18. In February 2025, Mr. Sun had multiple conversations with Ms. Shen. During those conversations, Mr. Sun communicated his significant confidentiality and data security concerns. Ms. Shen told Mr. Sun that any information Mr. Sun provided to Bloomberg for the purpose of verifying his personal wealth would be kept strictly confidential and would only be used to verify his personal assets for the Billionaires Index profile.

19. Based on Ms. Shen's representations, Mr. Sun was led to believe that the only information that would be reported about his assets in the Billionaires Index profile was the total value of his cryptocurrency holdings, and the general asset types and sources of his wealth that is

---

[1] https://www.bloomberg.com/billionaires/.

not attributed to cryptocurrency holdings. Mr. Sun understood, based on Ms. Shen's assurances, that his cryptocurrency holdings would be reported as a single lump sum amount and identified generally as "cryptocurrency" holdings.

20.     Before deciding whether to participate in the Billionaires Index, and to verify Ms. Shen's representations, Mr. Sun carefully reviewed other profiles on the Billionaires Index to see the extent of personal financial details published by Bloomberg, particularly as it related to cryptocurrency holdings. Based on Mr. Sun's review, he determined that the Billionaires Index does not generally disclose specific cryptocurrency holdings beyond bitcoin, and any reporting on bitcoin holdings is based solely on public statements made by the individuals themselves or public disclosures.[2] Any reporting of cryptocurrency holdings other than bitcoin is either based on public statements or not quantified. Mr. Sun also learned that the Billionaires Index relies overwhelmingly on public filings, statements, and its own disclosed calculations and does not publish confidential or privately shared information.

21.     Mr. Sun would not have agreed to participate in Bloomberg's Billionaires Index if he had known that Bloomberg would publish granular details about his cryptocurrency assets, including a breakdown of his cryptocurrency holdings.

22.     Even after Mr. Sun agreed to be profiled in the Billionaires Index, Mr. Sun and his team continued to be assured by Bloomberg that it would not use information from Mr. Sun's Confidential Financial Information for any other purpose, including publication, and would ensure that all of Mr. Sun's Confidential Financial Information would be securely maintained to prevent

---

[2] *See e.g.*, https://www.bloomberg.com/billionaires/profiles/brian-armstrong/ (last visited August 10, 2025); https://www.bloomberg.com/billionaires/profiles/cameron-h-winklevoss/ (last visited August 10, 2025); https://www.bloomberg.com/billionaires/profiles/changpeng-zhao/ (last visited August 10, 2025); https://www.bloomberg.com/billionaires/profiles/michael-j-saylor/ (last visited August 10, 2025).

disclosure. Indeed, Bloomberg provided assurances to Mr. Sun and emphasized that no one, aside from select Bloomberg employees, would be able to access it.

23. On or around February 27, 2025, Sprina Wang, the Senior Director of Marketing and Operations in support of TRON DAO created a group chat on Telegram, a secure messaging platform, between herself, Yeweon Park, Timothy Chung, and Mr. Sloan (the "Telegram Chat"). Ms. Park is a Public Relations Lead for TRON and Mr. Sun's publicist. Mr. Chung is a technology staff member for TRON and was the point of contact for Bloomberg in the wealth verification process. Mr. Sloan is a Bloomberg journalist and was introduced to Mr. Sun and his team as a member of Bloomberg's wealth verification team. Mr. Sun was added to the Telegram Chat on February 28, 2025, and another Bloomberg journalist, Tom Maloney, was added to the Telegram Chat later on March 19, 2025.

24. On or around February 28, 2025, Mr. Sloan provided the Telegram Chat with his email address so Mr. Chung could share Mr. Sun's Confidential Financial Information required for verification. To again stress the sensitivity of the Confidential Financial Information, when sending the documents, Mr. Chung stated "[w]e also hope that only trust & limited people have access right for the documents, which can maximize the protection of our data." Mr. Sloan replied, "Yes, definitely."

25. On March 3, 2025, Mr. Sloan reiterated the security measures in place to protect the privacy of Mr. Sun's Confidential Financial Information:

> Also--just wanted to double check that our plan for analyzing Justin's historical transactions is OK. Arkham Intelligence built a custom API for Bloomberg which allows us to compile data on token transfers and conversions to fiat for the wallet addresses you provided. That API is located on our internal network, meaning the file of Justin's wallet addresses **won't leave our office and the only people who have access are my team and the engineers who manage the API** (Arkham won't

have access). Are you all OK with that plan as it relates to data security? (emphasis added).

26. On March 8, 2025, Mr. Sun confirmed in the Telegram Chat that Bloomberg's additional security measures were acceptable.

27. To continue to stress the sensitivity of the Confidential Financial Information, on March 27, 2025, Mr. Sun's team once again referred to the parties' prior agreement regarding the limited use of, and the protection of, Mr. Sun's Confidential Financial Information in the following messages sent in the Telegram Chat:

> **All information shared within the group is strictly confidential and for verification purposes only.** Once the verification is complete, the data must be deleted. The data is solely for verification and may not be used for any other purpose (including reporting). We will not provide any responses beyond the verification service, as that falls entirely outside the scope of simply providing data.
>
> **This asset data is extremely sensitive. The spreadsheet is for verification purposes only and must not be used for any other purpose**. Any leakage may result in legal liability, and the data must be deleted. We will not answer any questions regarding these assets. We only provide data to verify authenticity.
>
> Bloomberg must also agree to use the data strictly in accordance with our requirements — for example, to provide only a general assessment or overall valuation based on the data, without making any specific references or detailed reporting on the figures. **This data is being provided solely for verification purposes and is not intended for reporting.** (emphasis added)

28. Bloomberg did not object to Mr. Sun's March 27, 2025, assertion of confidentiality or otherwise reject Mr. Sun's understanding of the parties' agreement as to the use and protection of Mr. Sun's Confidential Financial Information. This further confirmed the representations of Ms. Shen and Mr. Sun's understanding of what information was currently published in other profiles in the Bloomberg's Billionaires Index.

29. Bloomberg was made aware, repeatedly, that Mr. Sun valued the privacy of the details of his Confidential Financial Information. Based on the numerous representations made by Bloomberg reporters, Mr. Sun reasonably believed that Bloomberg understood Mr. Sun's privacy concerns and would only use his Confidential Financial Information for the sole purpose of verifying his personal wealth.

30. Without Bloomberg's confidentiality assurances, Mr. Sun would not have agreed to participate in Bloomberg's Billionaires Index.

**B. Despite its Promises of Confidentiality, Bloomberg Published Incorrect Information and Sensitive Details of Mr. Sun's Confidential Financial Information, and Plans to Publish More.**

31. On or around July 29, 2025, Mr. Sun's team learned that Ms. Shen was using figures from Mr. Sun's Confidential Financial Information in an unrelated Bloomberg article.

32. In the Telegram Chat, Ms. Wang reminded Mr. Sloan and Mr. Maloney that Bloomberg agreed to honor the confidentiality of the wealth verification process and safeguard Mr. Sun's Confidential Financial Information. Wang further stated that Ms. Shen's use of the Confidential Financial Information was in clear violation of Bloomberg's promise of confidentiality.

33. In late July 2025, Bloomberg sent Mr. Sun's team a draft Billionaire Index profile for Mr. Sun that Bloomberg intended to publish. Not only did the draft Billionaire Index profile contain numerous inaccuracies about Mr. Sun's personal history and his wealth, but it also contained a detailed breakdown of Mr. Sun's Confidential Financial Information, including the alleged specific amounts of cryptocurrencies owned by Mr. Sun ("Cryptocurrency Breakdown").

34. The information Bloomberg intended to publish in Mr. Sun's Billionaires Index profile was far more detailed than the type of information Bloomberg publishes as part of the

Bloomberg Billionaires Index for other people profiled. Moreover, the inclusion of the Cryptocurrency Breakdown was contrary to Bloomberg's representations, upon which Mr. Sun relied when he agreed to provide his Confidential Financial Information to Bloomberg.

35. On or around August 2, 2025, counsel for Mr. Sun sent Bloomberg a cease-and-desist letter, demanding Bloomberg immediately cease and desist from any use, disclosure, or publication of any information—verbal or written—regarding Mr. Sun's financial holdings other than the total net worth and the asset type and classification. In this letter, Mr. Sun's counsel detailed the significant harm that Mr. Sun would suffer if Bloomberg were to publish his Confidential Financial Information, including his Cryptocurrency Breakdown.

36. After numerous discussions with Bloomberg's Global Newsroom Counsel, on August 11, 2025, Bloomberg published the Billionaires Index profile of Mr. Sun which included the Cryptocurrency Breakdown.

37. The Billionaires Index profile of Mr. Sun materially misstates the amount of cryptocurrency Mr. Sun owns. Specifically, Bloomberg falsely reported that Mr. Sun "owns more than 60 billion Tronix (also referred to as TRON or TRX)," and "controls the majority of its supply."[3] Mr. Sun does not own 60 billion TRX, nor does he control the majority of its supply.

38. Both before and after publication of the Billionaires Index profile, counsel for Mr. Sun informed Bloomberg that the Cryptocurrency Breakdown misstates the amount of TRX Mr. Sun owns.

39. The longer the Cryptocurrency Breakdown remains on the internet, the more extensively the information will be shared and the greater the risk of theft, hacking, kidnapping, or bodily injury to Mr. Sun and his family. Bloomberg has also indicated its intention to publish a

---

[3] https://www.bloomberg.com/billionaires/profiles/h-e-justin-sun/ (last visited Sept. 15, 2025).

second article about Mr. Sun, separate and apart from the Billionaires Index profile, which will also include the Cryptocurrency Breakdown.

40. Bloomberg indicated there would be "daylight" between the publication of the Billionaire's Index Profile and the article, suggesting publication of the article is imminent.

41. An additional article featuring Mr. Sun's Cryptocurrency Breakdown will bring further publicity to Mr. Sun's financial information, which will increase the risk of theft, hacking, kidnapping, or bodily injury to Mr. Sun and his family.

C. **Mr. Sun Will Be Imminently And Irreparably Harmed By The Continued Publication Of His Confidential Financial Information and False Information Regarding his Cryptocurrency Holdings.**

42. The disclosure of Mr. Sun's Confidential Financial Information without his consent, and specifically publication of the Cryptocurrency Breakdown, constitutes a substantial invasion of Mr. Sun's privacy and has subjected Mr. Sun (and his family) to a significant and imminent risk of theft, hacking, kidnapping, and bodily harm.

43. A well-established industry exists for tracking cryptocurrency transfers, aimed at identifying the owners of wallets holding large amounts of digital assets—commonly referred to as "Whales." In fact, there are numerous websites that exist for this sole purpose.[4]

44. Due to the open-source and transparent nature of most public blockchains—which allow anyone to view transaction histories, wallet addresses, and balances—it is both feasible and relatively straightforward to identify wallet addresses with distinctive characteristics, such as unusually large balances or unique compositions of cryptoassets.

---

[4] *See e.g.*, Whale Alert, https://whale-alert.io/; Crypto Whale Tracker, https://cryptocurrencyalerting.com/crypto-whale-tracker.html; Unusual Whales, https://unusualwhales.com/.

45. Thus, by disclosing the specific amounts of Mr. Sun's cryptocurrency holdings broken out by cryptocurrency, Bloomberg has provided everyone—including bad actors—with vital information necessary to identify crypto wallets that are owned by Mr. Sun. Indeed, even if holdings are split among multiple wallets, bad actors can identify linked wallets through address clustering techniques, which analyze patterns such as common inputs, transaction flows, or behavioral signals, to find multiple addresses controlled by the same individual or entity.

46. As soon as Mr. Sun's wallets are identified, associated wallets can also be found.

47. Given his significant crypto holdings, once Mr. Sun's wallet numbers are known, Mr. Sun will become a considerable target for bad actors who can use the information to determine the methods to carry out an attack, which may include a variety of tools to steal, extort, and attack Mr. Sun.

48. For example, attackers can use advanced, tailored, and targeted social engineering and phishing to obtain the seedphrase (which functions similar to a password) which would allow them to steal the funds from Mr. Suns' wallets. These bad actors might also impersonate a crypto exchange or wallet provider. It is well known in the industry that these bad actors can craft extremely convincing fake emails or direct messages ("spear phishing") using on-chain behavior as bait.

49. Unlike traditional financial systems, crypto transactions are irreversible. If Mr. Sun is coerced, hacked, or scammed out of his funds, there is little or no recourse. Moreover, crypto is transferable without third-party oversight, making it an ideal medium for ransom demands. As one Bloomberg article recognized:

> ***People with crypto wealth face unique physical risks*** because public blockchain networks like Bitcoin and Ethereum allow tokens to be transferred instantly and anonymously. This means that if an individual is coerced into giving up the access credentials to their holdings, their assets

can vanish within seconds with little chance of recovery. Conversely in traditional financial services, bank accounts can be frozen or seized by law enforcement, allowing more chances to get back lost money.[5]

50. There have been documented attacks of large cryptocurrency holders and their family members, including kidnapping, torture, and other physical violence ("wrench attacks"), to force the transfer of crypto funds. Public wallet visibility increases the risk of such wrench attacks because it provides potential bad actors with additional information necessary to effectuate their attack, namely a characteristically distinctive amount of cryptocurrency tied to an otherwise anonymous wallet holder.

51. Bloomberg itself has published articles detailing the significant threat of attacks on individuals known to own cryptocurrency.[6]

52. Bloomberg also puts Mr. Sun at significant risk of hacks and injury by including materially false and misleading statements regarding his cryptocurrency holdings in the Billionaires Index profile and forthcoming article.

53. Critically, publication of the TRX holdings of Mr. Sun has already resulted in a marked increase in hacking attempts on Mr. Sun, which have resulted in a hack of Mr. Sun's personal information.

54. On-chain evidence provided to Bloomberg clearly demonstrates that Mr. Sun controls only a fraction of the TRX that Bloomberg incorrectly attributes to him. A substantial portion of the TRX Bloomberg mischaracterizes as Mr. Sun's personal holdings is held in

---

[5] https://www.bloomberg.com/news/articles/2025-05-18/crypto-high-rollers-go-big-on-bodyguards-to-deter-kidnappers (last accessed on August 10, 2025) (emph. added).

[6] *See e.g.*, https://www.bloomberg.com/opinion/articles/2025-05-22/crypto-crime-is-the-future-bank-heists-are-history (last accessed August 7, 2025); https://www.bloomberg.com/news/articles/2025-05-18/crypto-high-rollers-go-big-on-bodyguards-to-deter-kidnappers (last accessed August 10, 2025).

ecosystem-managed reserves and exchange custodial wallets—structures designed to support network stability and safeguard customer assets, rather than any individual's personal wealth. Many of these wallets are publicly visible and clearly labeled on blockchain explorers as belonging to major platforms.

55.     Bloomberg's failure (and refusal) to distinguish between personal, ecosystem, and exchange wallets—and its publication of false statements about Mr. Sun's TRX ownership—exposes Mr. Sun to legal, financial, and physical threats, including theft, hacking, and kidnapping.

56.     The false claim that Mr. Sun controls a majority of TRX undermines trust in the TRON network by falsely suggesting centralization of control of the blockchain, thereby eroding one of blockchain's core principles: decentralization. This published mischaracterization injures the TRON network—including its goodwill and reputation—as well as the TRON ecosystem participants and ultimately, Mr. Sun, founder of TRON.

57.     By falsely portraying Mr. Sun as the majority owner of TRX, Bloomberg creates the false impression that Mr. Sun can exert significant influence over the price of the cryptocurrency, including manufacturing swings.

58.     Bloomberg further creates the false impression that Mr. Sun has centralized control over TRON and can make unilateral decisions about the development and direction of the blockchain. This false impression erodes TRON users' trust in the blockchain and its native token TRX, discourages entrepreneurs and developers to build on TRON, depriving the network of new ideas and capital, and puts Mr. Sun at even greater risk for theft, hacking, kidnapping, and bodily injury, because bad actors are additionally incentivized to steal from individuals they believe have control over cryptocurrency markets and networks. Mr. Sun has been and will be damaged by Bloomberg's actions. Mr. Sun's Billionaires Index profile can be viewed by millions of people

around the world. As a result of the profile and its false statements, Mr. Sun will face wrench attacks and a torrent of online abuse, as well as damage to Mr. Sun's earnings and potential earnings.

59.     Further, regulators and policymakers rely on accurate attribution; Bloomberg's mislabeling skews their understanding and risks prompting misguided enforcement actions. Bloomberg has unequivocally threatened to publish an additional article about Mr. Sun which contains materially false and misleading information about Mr. Sun, including false information about Mr. Sun's cryptocurrency holdings.

60.     Publication of the threatened additional article is imminent.

### COUNT I: PUBLIC DISCLOSURE OF PRIVATE FACTS

61.     Mr. Sun incorporates the above paragraphs by reference as if fully set forth herein.

62.     The Cryptocurrency Breakdown is Mr. Sun's private Confidential Financial Information that is not otherwise known to the public.

63.     Mr. Sun's Confidential Financial Information, including the Cryptocurrency Breakdown, was provided to Bloomberg for the sole purpose of verifying Mr. Sun's total wealth, and not for publication or other public disclosure.

64.     Publicizing Mr. Sun's Cryptocurrency Breakdown is highly offensive to a reasonable person because it exposes Mr. Sun to a significant and imminent risk of theft, hacking, kidnapping, and bodily harm.

65.     The specific amounts of cryptocurrency owned by Mr. Sun are not of legitimate public concern. Indeed, Bloomberg does not include the specific amounts and types of cryptocurrency holdings owned by other individuals unless in a prior public statement or

disclosure—e.g., Brian Armstrong, Cameron Winklevoss, Changpeng Zhao, and Michael Saylor—on the same Bloomberg Billionaires Index.

66. Bloomberg has published Mr. Sun's Cryptocurrency Breakdown on its platforms, exposing it to their millions of monthly readers, as well as bad actors who will use it to identify Mr. Sun's wallets.

67. Bloomberg has unequivocally stated its intention to publish Mr. Sun's Cryptocurrency Breakdown in a subsequent article on its platforms, further increasing the exposure of Mr. Sun's private information.

68. Accordingly, Mr. Sun seeks injunctive relief requiring Bloomberg to remove the amounts of any specific cryptocurrency owned by Mr. Sun from each of its online publications and prohibiting Bloomberg from publishing the amounts of any specific cryptocurrency owned by Mr. Sun in any future publication.

## COUNT II: PROMISSORY ESTOPPEL

69. Mr. Sun incorporates the above paragraphs by reference as if fully set forth herein.

70. Representatives of Bloomberg promised Mr. Sun that the amounts of specific cryptocurrency owned by Mr. Sun would not be publicized and that they would take measures to protect Mr. Sun's Confidential Financial Information from disclosure.

71. Representatives of Bloomberg promised Mr. Sun that any Confidential Financial Information provided by Mr. Sun would only be used to verify Mr. Sun's total wealth.

72. Representatives of Bloomberg made these promises to Mr. Sun with the purpose and expectation of persuading Mr. Sun to provide his Confidential Financial Information.

73. Mr. Sun relied upon these promises when he made the decision to participate in the Billionaires Index and provide his Confidential Financial Information to Bloomberg.

74. Without these promises, Mr. Sun would not have agreed to participate in the Billionaires Index or provide Bloomberg with his Confidential Financial Information upon which Bloomberg used to develop the Cryptocurrency Breakdown.

75. Mr. Sun is at risk of harm if his Confidential Financial Information, including his Cryptocurrency Breakdown, is further publicized by Bloomberg.

76. Injustice can only be avoided by enforcing the promises Bloomberg made to Mr. Sun by requiring Bloomberg to remove the amounts of any specific cryptocurrency owned by Mr. Sun from any of its online publications and prohibiting Bloomberg from publishing the amounts of any specific cryptocurrency owned by Mr. Sun in any future publication.

## PRAYER FOR RELIEF

Accordingly, Mr. Sun respectfully requests that the Court enter judgment in his favor, granting it the following relief:

A. A temporary restraining order requiring Bloomberg to remove the amounts of any specific cryptocurrency owned by Mr. Sun from any of its online publications;

B. A preliminary and permanent injunction prohibiting Bloomberg from publishing the amounts of any specific cryptocurrency owned by Mr. Sun in any future publication;

C. A preliminary and permanent injunction requiring Bloomberg to retract its claim that Mr. Sun owns 60 billion TRX and controls the majority of its supply.

D. Award Mr. Sun his reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Grant Mr. Sun such further relief as Court deems just.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Mr. Sun demands trial by jury on all issues so triable.

Dated: September 15, 2025					BAKER & HOSTETLER LLP

/s/ *Jeffrey J. Lyons*
Jeffrey J. Lyons (#6437)
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
(302) 407-4222
jjlyons@bakerlaw.com

Teresa Goody Guillén
Katherine L. McKnight
1050 Connecticut Avenue, NW, Suite 1100
Washington, D.C. 20036
(202) 861-1630
tgoodyguillen@bakerlaw.com
kmcknight@bakerlaw.com

Isabelle Corbett Sterling
Transamerica Pyramid Center
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
(415) 659-2606
isterling@bakerlaw.com

*Attorneys for Plaintiff Yuchen Justin Sun*