## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| SUN, YUCHEN JUSTIN, | ) |
|  | ) |
| Plaintiff(s), | ) |
|  | ) |
| v. | ) C.A. No. 25-1007-CFC |
|  | ) |
| BLOOMBERG L.P. and | ) |
| BLOOMBERG INC., | ) |
|  | ) |
| Defendant(s). | ) |

## DEFENDANTS' BRIEF IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER
## AND A PRELIMINARY INJUNCTION

## **TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................1

FACTUAL BACKGROUND & NATURE AND STAGE OF
    PROCEEDINGS...................................................................................4

    A.    The Bloomberg Billionaires Index. ........................................4

    B.    Bloomberg Prepares the Justin Sun Profile..........................4

    C.    The Profile Is Published. ........................................................8

    D.    This Proceeding. .....................................................................9

LEGAL STANDARD.......................................................................................9

ARGUMENT ..................................................................................................10

I.    SUN CANNOT DEMONSTRATE LIKELIHOOD OF SUCCESS
    ON THE MERITS. ................................................................................10

    A.    Sun Cannot Succeed on His Claim for Promissory Estoppel. ............11

    B.    Sun Cannot Succeed on His Claim for Public Disclosure of
        Private Facts. ........................................................................14

II.    THE BALANCE OF EQUITIES DOES NOT FAVOR SUN. .....................18

    A.    Sun Cannot Show That He Will Suffer Irreparable Harm If
        the Motion Is Denied. ...........................................................18

    B.    The Motion Seeks an Unconstitutional Prior Restraint and
        Bloomberg Will Suffer Irreparable Harm If It Is Granted. .................22

III.    AN UNCONTITUTIONAL INJUNCTION IS NOT IN THE
    PUBLIC INTEREST. ............................................................................25

CONCLUSION ..............................................................................................26

## <u>TABLE OF AUTHORITIES</u>

### CASES

*A.A. v. New Jersey*, 176 F. Supp. 2d 274 (D.N.J. 2001) ...........................................18

*Alexander v. United States*, 509 U.S. 544 (1993) ....................................................22

*Barbieri v. News-J. Co.*, 189 A.2d 773 (Del. 1963) ...........................................15, 16

*Baton v. Ledger SAS*, 740 F. Supp. 3d 847 (N.D. Cal. 2024).................................16

*Black & Decker Corp. v. Am. Standard Inc.*, 679 F. Supp. 1183 (D. Del. 1988) ......................................................................................................18

*Blatty v. N.Y. Times Co.*, 728 P.2d 1177 (Cal. 1986) .............................................22

*Bullock v. Carney*, 463 F. Supp. 3d 519 (D. Del. 2020)............................................9

*CapStack Nashville 3 LLC v. MACC Venture Partners*, 2018 WL 3949274 (Del. Ch. Aug. 16, 2018) .........................................................22, 24, 25

*CBS Inc. v. Davis*, 510 U.S. 1315 (1994) ...........................................................23, 24

*Chaiken v. VV Publ'g Corp.*, 907 F. Supp. 689 (S.D.N.Y. 1995) ...........................15

*Chrysler Corp. (Delaware) v. Chaplake Holdings, Ltd.*, 822 A.2d 1024 (Del. 2003) .............................................................................................11, 14

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194 (3d Cir. 2024) ....................................................10

*Democratic National Committee v. Republican National Committee*, 673 F.3d 192 (3d Cir. 2012) ............................................................25

*Elrod v. Burns*, 427 U.S. 347 (1976) .......................................................................24

*Fanean v. Rite Aid Corp.*, 984 A.2d 812 (Del. Super. Ct. 2009)............................13

*Fifth Third Bank v. Steve Hulen Const., LLC*, 2011 WL 2433711 (M.D. Tenn. June 14, 2011)................................................................................17

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) ............................................24

*Gilbert v. Med. Econ. Co.*, 665 F.2d 305 (10th Cir. 1981) ......................................15

*Grubbs v. Univ. of Del. Police Dep't*, 174 F. Supp. 3d 839 (D. Del. 2016) ................................................................................................15

*Hurvitz v. Hoefflin*, 101 Cal. Rptr. 2d 558 (Ct. App. 2000) ....................................23

*In re Charlotte Observer*, 921 F.2d 47 (4th Cir. 1990) ...........................................24

*In re King World Prods., Inc.*, 898 F.2d 56 (6th Cir. 1990) ....................................23

*In re Providence J. Co.*, 820 F.2d 1342 (1st Cir. 1986) ...........................................23

*James Cable, LLC v. Millennium Digit. Media Sys., L.L.C.*, 2009 WL 1638634 (Del. Ch. June 11, 2009)................................................................13

*Jenkins v. Dell Pub. Co.*, 251 F.2d 447 (3d Cir. 1958).....................................15, 17

*McCarthy v. Fuller*, 810 F.3d 456 (7th Cir. 2015) ..................................................25

*Meador v. New Times, Inc.*, 36 F.3d 1103 (9th Cir. 1994) ......................................23

*Metro. Convoy Corp. v. Chrysler Corp.*, 208 A.2d 519 (Del. 1965).......................14

*N.Y. Times Co. v. United States*, 403 U.S. 713 (1971) ..............................................2

*Neb. Press Ass'n v. Stuart*, 427 U.S. 539 (1976)....................................................22

*Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102 (Del. Ch. 2017)...............2, 22

*Page v. Oath Inc.*, 2018 WL 1474620 (S.D.N.Y. Mar. 26, 2018)...........................25

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376 (1973)................................................................................................22

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) .....................................18

*Russell v. Del. Online*, 2016 WL 3437597 (D. Del. June 20, 2016) .......................23

*Shanghai Qianzhuo Network Tech. Co. v. Cattasaurus*, LLC, 2025 WL 2029309 (D. Del. July 21, 2025) ........................................................9, 14, 17

*Starbucks Corp. v. McKinney*, 602 U.S. 339 (2024) ...............................................10

*State Farm Mut. Auto Ins. Co. v. Patterson*, 7 A.3d 454 (Del. 2010) ....................11

*Sweigert v. Goodman*, 2024 WL 4493768 (S.D.N.Y. Oct. 11, 2024) .....................11

*Territory of U.S. V.I. v. Goldman, Sachs & Co.*, 937 A.2d 760 (Del.
     Ch. 2007)................................................................................................................11

*Vance v. Universal Amusement Co.*, 445 U.S. 308 (1980).....................................24

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).....................................10

## OTHER AUTHORITIES

Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 Syracuse
     L. Rev. 157, 173 (2007)......................................................................................23

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Yuchen Justin Sun ("Sun") has renewed a month-old motion for a temporary restraining order and preliminary injunction ("Motion") that seeks an unconstitutional prior restraint against Defendants Bloomberg L.P. and Bloomberg Inc. ("Bloomberg"). The Motion seeks to require Bloomberg to remove, prior to any judgment, newsworthy information about an influential billionaire's financial holdings that has been available to the public for more than a month, and to prevent Bloomberg from publishing other information in a forthcoming Bloomberg Businessweek article about Sun. The Motion flouts the First Amendment and is otherwise without legal or factual merit. It should be denied.

Sun seeks emergency relief over two sentences in the August 11, 2025 Bloomberg Billionaires Index profile reporting (as revised August 15 to correct a typo) on Sun's net worth and how he acquired his assets. But the sentences merely provide a high-level breakdown of some of his cryptocurrency holdings:

> "Sun owns more than 60 billion Tronix (also referred to as TRON or TRX), the cryptocurrency native to Tron, according to an analysis of financial information provided by representatives of Sun in February 2025. . . . Sun also owns about 17,000 Bitcoin, 224,000 Ether, and 700 million Tether, according to the same analysis."

Ex. 1.[1]

---

[1] All Exhibits are attached to the Declaration of Thomas G. Hentoff.

The Amended Complaint ("Complaint") has two counts: promissory estoppel and public disclosure of private facts. Compl. ¶¶ 61-76. The gravamen of both is the unwanted publication of *accurate* information. Sun's assertion that his life and finances were jeopardized because of these two sentences is baseless. And his new assertion that Bloomberg harmed him by publishing allegedly *inaccurate* information about his TRON holdings, Mot. 11, fails to identify a cognizable harm from the claims he brought, as he did not sue Bloomberg for defamation. And courts anyway reject prior restraints based on claims of defamation. *See, e.g.*, *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 118 n.67 (Del. Ch. 2017).

Sun's Motion should be denied:

- Requiring the removal of information in a news article or blocking the publication of a forthcoming news article are both unconstitutional prior restraints. As exemplified by the Pentagon Papers case, *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971), the Supreme Court has never allowed a TRO or preliminary injunction against a news article. Sun fails to cite any contrary authority.

- The Motion is moot. Bloomberg published its report on August 11, two hours *before* Sun filed this lawsuit and original emergency motion. Ex. 1. Sun's assertion that the Bloomberg Billionaires Index is behind a paywall, Mot. 17, is a red herring. The profile has been available to Bloomberg's hundreds of thousands of subscribers for over a month. Exs. 1, 3. And other news media outlets have

already reported its breakdown of Sun's cryptocurrency holdings. Exs. 4-9. This includes cryptocurrency journalist Molly White, who, reporting on this lawsuit, reproduced the breakdown while observing, "It seems Sun is objecting to VERY rough estimates of his crypto holdings." Ex. 5. Sun is unable to point to any harm that he has experienced in the month since publication. Indeed, the renewed Motion relies on harm declarations by Sun and Cliff Koutsky that were submitted on August 11 with the original motion and never updated. Surely if Sun had actually suffered irreparable harm, these declarations would have attested to it.

- Sun cannot satisfy the requirements for emergency relief: (1) He has no likelihood of success on the merits because Bloomberg never made any promise to him inconsistent with what it published (promissory estoppel) and he has no claim for publication of truthful newsworthy information (public disclosure of private facts). (2) The pre-lawsuit publication of the information moots his irreparable harm allegations, which are in any event misleading and disproved by his own actions. (3) Any prohibition on publication, including a takedown of a report that already has been published, would irreparably harm Bloomberg's First Amendment right to publish. (4) A prior restraint would thus disserve the public interest.

## FACTUAL BACKGROUND & NATURE AND STAGE OF PROCEEDINGS

### A.    The Bloomberg Billionaires Index.

The Bloomberg Billionaires Index is a daily ranking of the world's 500 richest people based on their net worth. *See generally* https://www.bloomberg.com/billionaires/. Each subject's profile includes information about the billionaire, and asset valuations of that individual's fortune. Declaration of Thomas Maloney ¶ 5. The valuations are updated each trading day. *Id.* It is one of the most prominent tools available for Bloomberg readers, and the public more generally, to explore, compare and better understand the fortunes of the wealthiest people in the world. *Id.*

### B.    Bloomberg Prepares the Justin Sun Profile.

Plaintiff Justin Sun "is a successful entrepreneur in the blockchain and cryptocurrency industry. Most notably, Sun is the founder of TRON, a blockchain platform," which is "one of the most active open blockchain platforms in the world with over 300 million accounts." Compl. ¶ 2. Sun is a billionaire having "accumulated a sizable portfolio of various cryptocurrencies and other valuable assets." *Id.*

On February 3, 2025, Muyao Shen, a Bloomberg journalist, contacted Sun via WeChat, an instant messaging platform, seeking an interview. Shen Decl. ¶ 5. Shen was working on a Bloomberg Businessweek article about Sun. *Id.* ¶ 28. Work on that article is still underway. *Id.*

4

On February 7, Sun called Shen.  *Id.*  ¶ 8.  They spoke for approximately five minutes.  *Id.*  Sun said he was unable to sit for an interview at that time.  *Id.*  During that call, Sun never expressed any confidentiality concerns about keeping information about his wealth private.  *Id.* ¶ 9.  This call was the only time they spoke by phone in February, as Shen's call log confirms.  *Id.* ¶ 10.

Over the next few weeks, Shen and Sun exchanged WeChat messages on various topics.  Sun also sent Shen a few voice messages.  Shen has copies of all of these communications, which corroborate her account.  *Id.* ¶ 11.

On February 12, Shen sent a WeChat message to Sun and for the first time proposed that Bloomberg might feature him in the Bloomberg Billionaires Index. *Id.* ¶ 12.  Sun responded the same day that he was interested in participating.  *Id.* ¶ 13.  This exchange makes clear that, contrary to Plaintiff's allegations, Compl. ¶ 18, Shen and Sun did not discuss the Bloomberg Billionaires Index in their February 7 phone call, Shen Decl. ¶¶ 7-9.  Indeed, their WeChat messages show that Shen only raised the Bloomberg Billionaires Index for the first time on February 12. *Id.* ¶ 12.

On February 26, Shen sent an email introducing Sun's publicist Sprina Wang to the Bloomberg wealth team, so the wealth reporters could profile him in the Index. *Id.* ¶ 14; Maloney Decl. ¶ 6.

Sun and Shen continued to communicate via WeChat about other topics, including a potential interview for a separate article. Shen Decl. ¶ 16. However, Shen never promised confidentiality regarding Bloomberg's coverage of Sun in connection with the Index or otherwise. *Id.* ¶¶ 17-27.

On February 27, Wang created a Telegram group chat where Sun's representatives' could share information regarding his assets, to support valuations that would appear in the Index profile. Maloney Decl. ¶ 7. Group chat participants included Sloan, Sun's colleague, Timothy Chung, and at times Sun himself. *Id.*

On February 28, at approximately 5:55 AM EST, Chung sent Sloan a spreadsheet containing a detailed inventory of Sun's net worth, including specific cryptocurrency wallets, investments, and other assets. *Id.* ¶¶ 8-10; Declaration of Dylan Sloan ¶¶ 8-9.[2]

When this spreadsheet was sent, neither Maloney nor Sloan had offered or promised confidentiality for the information Sun's team would provide for the Index profile. Maloney Decl. ¶¶ 11-12; Sloan Decl. ¶ 10. Indeed, all of the Bloomberg Billionaires Index team's communication with Sun and his team prior to this point

---

[2] While the Complaint alleges that Bloomberg overstated Sun's TRON holdings, Compl. ¶ 37, Sun has no answer for the fact that the 60 billion number comes directly from Sun's own net worth spreadsheet provided by his associate, Chung. In addition, on March 26, 2025, Chung expressly confirmed to Bloomberg that Sun personally held "60.15 bn of 95 bn total supply" for TRON. Maloney Decl. ¶ 31.

were in writing, and that written record decisively establishes that confidentiality was never discussed.  Maloney Decl. ¶ 12.

While the parties subsequently discussed data security related to Sun's documents, those discussions did not pertain to Bloomberg's ability to report on the information contained within those documents as Bloomberg deemed appropriate in its editorial judgment.  *Id.* ¶¶ 12-20.

At various points after sending the financial file, Sun's team made unilateral demands regarding confidentiality in the Bloomberg Billionaires Index.  None of these demands ever imposed any obligation on Bloomberg as Bloomberg never agreed to them.  Maloney Decl. ¶¶ 32-41.

One example of that is that on March 27, 2025, Sun sent a lengthy message via Telegram purporting to impose confidentiality restrictions on Bloomberg's reporting.  Compl. ¶ 27; Maloney Decl. ¶ 32.  Contrary to Sun's allegation that these messages "referred to the parties' prior agreement regarding the limited use of, and the protection of, Plaintiff's Confidential Financial Information," Compl. ¶ 27, there was no such agreement, Maloney Decl. ¶ 35.  Sun's allegation that "Bloomberg did not object to Plaintiff's March 27, 2025, assertion of confidentiality," Compl. ¶ 27, and "waited *four months* . . . to register any disagreement," Mot. 21, is false.  Bloomberg journalists met by Zoom with Sun's representative on *April 14*, within

three weeks, to reject Sun's assertion; they have contemporaneous notes of the call. Maloney Decl. ¶¶ 36-41; Sloan Decl. ¶¶ 22-27.

In the lead-up to publication of the Index, Sun's lawyers sought to persuade Bloomberg not to publish the financial information that Sun's representatives had previously provided, in either the Index profile or the forthcoming Bloomberg Businessweek article. They made claims about risks to Sun's financial and physical safety, like those included in the August 11, 2025 Koutsky declaration submitted with the Motion. Bloomberg in-house counsel explained that what Bloomberg would publish in the Index would not implicate such concerns, noting for example that Bloomberg would *not* publish the cryptocurrency wallet addresses Sun's representative had provided. Ex. 2. Bloomberg counsel also made clear that the forthcoming Bloomberg Businessweek article would only "include information from the *published* Billionaires Index profile, and not anything from the spreadsheet that originally was provided for purposes of the Index, but not ultimately included in the Index profile." *Id.* (emphasis original).

### C.    The Profile Is Published.

Bloomberg published the Index profile on Sun at 5:12 p.m. on August 11, 2025. Maloney Decl., ¶ 47. Two hours later, Sun filed this lawsuit and his original motion for emergency relief. Since publication, the profile has been available to Bloomberg's hundreds of thousands of subscribers. Ex. 3. Other news outlets

immediately covered Sun's lawsuit, leading to their reporting the information in the Index profile that Sun seeks to enjoin here.   Exs. 4-5, 7-9.

### D.   This Proceeding.

Sun sued and sought a TRO and preliminary injunction on August 11, 2025. Sun voluntarily withdrew his original motion on August 14 as the parties discussed Sun's correction request.  Mot. 7.  Those discussions stalled because Sun refused to answer Bloomberg reporters' questions or provide sufficient support for why the financial information he initially and voluntarily provided was inaccurate, Maloney Decl. ¶¶ 49-55.  Without warning, Sun renewed his emergency Motion on September 11.

## LEGAL STANDARD

A preliminary injunction and a temporary restraining order are both "extraordinary and drastic remed[ies] . . . that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Shanghai Qianzhuo Network Tech. Co. v. Cattasaurus*, LLC, 2025 WL 2029309, at *1 (D. Del. July 21, 2025) (emphasis original) (citation omitted).   A temporary restraining order in particular is meant to "preserve the status quo so that a reasoned resolution of a dispute may be had." *Bullock v. Carney*, 463 F. Supp. 3d 519, 523 (D. Del. 2020) (citation omitted).

For either form of injunctive relief, a plaintiff must establish four elements: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[3] "When one factor is dispositive, a district court need not consider the others." *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 203 (3d Cir. 2024) (citation omitted). Here, all factors support Bloomberg.

## ARGUMENT

## I.    SUN CANNOT DEMONSTRATE LIKELIHOOD OF SUCCESS ON THE MERITS.

Sun's claims for promissory estoppel and public disclosure of private facts both fail. Bloomberg never promised to keep a breakdown of Sun's cryptocurrency holdings confidential, and Bloomberg's reporting of Sun's cryptocurrency holdings is newsworthy information not highly offensive to an ordinary person.

Sun brings both of his claims under Delaware law. Mot. 12-16. Bloomberg responds to this emergency motion applying forum law, but reserves for the next stage of the case, its motion to dismiss, any appropriate choice of law argument

---

[3] While Sun's brief cites to a more lenient standard for the second requirement, Mot. 11, the Supreme Court recently reiterated that "[a]bsent a clear command from Congress, then, courts must adhere to the traditional four-factor test articulated in *Winter*," *Starbucks Corp. v. McKinney*, 602 U.S. 339, 340 (2024).

under Delaware's "most significant relationship" test. *State Farm Mut. Auto Ins. Co. v. Patterson*, 7 A.3d 454, 457 (Del. 2010). Right now, any difference is immaterial because Sun's Motion seeks unconstitutional relief and fails under the law of any jurisdiction. It bears noting, however, that the law of New York, where Bloomberg is based, does not even recognize an independent cause of action for public disclosure of private facts. *See, e.g.*, *Sweigert v. Goodman*, 2024 WL 4493768, at *6 (S.D.N.Y. Oct. 11, 2024) ("Because there is no common-law privacy right under New York law, the plaintiff cannot state a claim for relief based on [the defendant's] alleged public disclosure of private facts.").

### A.    Sun Cannot Succeed on His Claim for Promissory Estoppel.

A plaintiff asserting a claim for promissory estoppel "must demonstrate by clear and convincing evidence that: (i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise." *Chrysler Corp. (Delaware) v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1032 (Del. 2003) (citation omitted). "The promise must also be reasonably definite and certain," and the promise "must be a real promise—mere expressions of expectation, opinion, or assumption are insufficient." *Territory of*

*U.S. V.I. v. Goldman, Sachs & Co.*, 937 A.2d 760, 804 (Del. Ch. 2007), *aff'd,* 956 A.2d 32 (Del. 2008).  Sun's claim fails each of these elements.

First, Bloomberg did not promise to keep a breakdown of Sun's cryptocurrency holdings confidential.  Shen, the Bloomberg reporter who initially contacted Sun, did not  "make any promises of confidentiality regarding any aspects of Bloomberg's coverage of Sun."  Shen Decl. ¶ 17.  Nor did any other Bloomberg journalist.  *Id.*; Maloney Decl. ¶¶ 11-12, 34-41; Sloan Decl. ¶¶ 10-27.  On the contrary, Bloomberg told Sun the profile would include how he "made money to become a billionaire," Shen Decl. ¶ 12, and Sun knew that his "cryptocurrency holdings would be reported," D.I. 21 ¶ 7.

After Sun's representative sent Bloomberg a spreadsheet detailing Sun's assets, Sun's representatives asked about data security and Bloomberg journalists stated that Bloomberg would only access his cryptocurrency wallet addresses using a "secure network."  D.I. 23-2 at 1-2.  Bloomberg "understood that this exchange concerned data security."  Maloney Decl. ¶ 17.  Although Sun subsequently sent a message trying to impose additional expectations for how his financial information would be used, D.I. 23-2 at 3, Bloomberg contacted Sun's spokesperson to reject those terms, Maloney Decl. ¶¶ 32-41.

Sun contends that "Bloomberg made express promises that any information provided to Bloomberg would only be used to verify his personal assets."  Mot. 13.

12

That cannot be true as the verification was part of Bloomberg's reporting on those assets. Maloney Decl. ¶ 5.

Sun claims he received "repeated written assurances" that Bloomberg would not publish a breakdown of Sun's cryptocurrency holdings. D.I. 21 ¶ 10; *see also* Mot. 13 (citing D.I. 23 ¶¶ 11-13). Those "written assurances" appear to be in the Telegram chat attached as Exhibit B to the Declaration of Sprina Wang (D.I. 23-2). As noted above, those messages from Bloomberg journalists concern data security, not Bloomberg's ability to report on Sun's assets. *See* D.I. 23-2.

Sun notes that based on "representations" by Shen—which Shen denies she made, with communications records corroborating her account, Shen Decl. ¶¶ 17-27 —and his review of past Index profiles he "gained comfort that the Billionaires Index did not publish details about the holdings of specific cryptocurrencies." D.I. 21 ¶¶ 6-10. Far from the definite promises of confidentiality in a HIPAA-required privacy notice that may support a claim for promissory estoppel, *see Fanean v. Rite Aid Corp.*, 984 A.2d 812, 821-22 (Del. Super. Ct. 2009) (cited at Mot. 13), Sun's "extremely vague" description of Shen's alleged representations about what Bloomberg would publish does not "amount to a real promise" enforceable in court, *James Cable, LLC v. Millennium Digit. Media Sys., L.L.C.*, 2009 WL 1638634, at *5 (Del. Ch. June 11, 2009). And Sun's "expect[ations]" or "assum[ptions]"

regarding what Bloomberg would publish are insufficient. *Metro. Convoy Corp. v. Chrysler Corp.*, 208 A.2d 519, 521 (Del. 1965).

Second, because Bloomberg made no promise of confidentiality and any discussions of confidentiality occurred *after* Sun provided his financial information, Bloomberg did not reasonably expect to induce action or forbearance on the part of Sun. For those same reasons, Sun did not reasonably rely on promises by Bloomberg to his detriment.

Third, there would be no injustice in allowing Bloomberg to continue to publish Sun's cryptocurrency holdings. The real injustice would be depriving Bloomberg of the benefits of its work by forcing Bloomberg to take down a profile the subject no longer likes—or prevent the publication of a future article—which would also be unconstitutional prior restraints. *See infra*.

Sun's promissory estoppel claim should fail at any stage of the case under any standard. But the claim is especially deficient as a basis for emergency injunctive relief, because Sun has failed to make (and cannot make) a "clear showing," *Shanghai Qianzhuo*, 2025 WL 2029309 at *1, by "clear and convincing evidence," *Chrysler Corp.*, 822 A.2d at 1032, of promissory estoppel.

## B. Sun Cannot Succeed on His Claim for Public Disclosure of Private Facts.

A claim for the public disclosure of private facts requires proof of four elements: (1) public disclosure, (2) of a private fact, (3) which would be offensive

and objectionable to the reasonable person, and (4) which is not of a legitimate public concern. *Grubbs v. Univ. of Del. Police Dep't*, 174 F. Supp. 3d 839, 861 (D. Del. 2016). Sun's claim fails for at least two reasons.

First, the Index report is newsworthy material of legitimate public concern subject to "the privilege which protects normal news items against claims of tortious invasion of privacy." *See Jenkins v. Dell Pub. Co.*, 251 F.2d 447, 452 (3d Cir. 1958); *see also Barbieri v. News-J. Co.*, 189 A.2d 773, 777 (Del. 1963) ("Since the articles dealt with a subject still newsworthy, their publication is not actionable."). Courts afford news publications significant deference in their determination of what is newsworthy to protect First Amendment rights and guarantee "the breathing space needed by the press to properly exercise effective editorial judgment." *Gilbert v. Med. Econ. Co.*, 665 F.2d 305, 307-08 (10th Cir. 1981); *see also Chaiken v. VV Publ'g Corp.*, 907 F. Supp. 689, 696 (S.D.N.Y. 1995) ("[A] court should not second guess editorial judgments as to what constitutes a matter of public concern 'absent clear abuse'"). Accordingly, courts will dismiss such claims unless "the lack of any meritorious public interest in the disclosure is *very clear* and its offensiveness to ordinary sensibilities is equally clear." *Jenkins*, 251 F.2d at 450 (emphasis added).

Sun cannot possibly demonstrate a "very clear" absence of newsworthiness in the Bloomberg Index information. First, given the broad editorial discretion afforded to journalists, Bloomberg's decision that the information is newsworthy

15

and should be published sufficiently indicates there is legitimate public interest. Maloney Decl. ¶¶ 5-6. Second, there is strong public interest in Bloomberg's Index of the world's wealthiest and most influential individuals. *Id*. Third, Sun is such a prominent cryptocurrency entrepreneur and investor that his "trading activities often create significant market movements" and are "closely watched by traders and analysts." *See* Declaration of stacie-marie ishmael ¶ 16 ("ishmael Decl.").

Relying on *Baton v. Ledger SAS*, 740 F. Supp. 3d 847 (N.D. Cal. 2024), Sun argues that Bloomberg's two-sentence cryptocurrency breakdown is "confidential" and thus cannot have legitimate public interest. Mot. 15. But the *Baton* plaintiffs were consumers whose personally identifiable information (including names, phone numbers, email addresses, and home addresses) on defendants' cryptocurrency platform was stolen by hackers and posted on the dark web. 740 F. Supp. 3d at 875. The facts here could not be more different. Bloomberg did not publish Sun's personally identifiable information, or even his cryptocurrency wallet addresses—it only included high-level nonconfidential estimates of his assets, less specific than what Sun personally disclosed and otherwise has been reported elsewhere. ishmael Decl. ¶ 14. In addition, Sun also ignores that public figures like himself have diminished privacy rights, *see Barbieri*, 189 A.2d at 774. Even if retail cryptocurrency investors' financial holdings were not of legitimate public concern,

16

it is newsworthy whether a majority of TRON is owned by its founder. *See, e.g.*, Ex. 5. Newsworthiness defeats Sun's claims.

Second, the high-level estimates published by Bloomberg are not offensive or objectionable to the reasonable person. *See Fifth Third Bank v. Steve Hulen Const., LLC*, 2011 WL 2433711, at *3, *7 (M.D. Tenn. June 14, 2011) (holding that disclosure of even specific personal financial information was not offensive). Bloomberg did not publish any detailed financial information, like Sun's cryptocurrency wallet addresses, and only stated rough round number estimates of Sun's cryptocurrency assets. Similar estimates were previously reported elsewhere, and in any case, would not be distinctive enough amounts to cause Sun's alleged identification risks. ishmael Decl. ¶¶ 9, 12, 15-16. This is underscored by Sun's *own disclosure* of his *precise* Bitcoin holdings. *See* ishmael Decl. ¶ 13(b). It cannot be objectively offensive for Bloomberg to publish less granular estimates of Sun's cryptocurrency holdings than those he has published himself.

Because Sun has failed to make a showing that "the lack of any meritorious public interest in the [profile] is very clear and its offensiveness to ordinary sensibilities is equally clear," he is unlikely to succeed on his claim for public disclosure of private facts and the motion should be denied. *Jenkins*, 251 F.2d at 450; *Shanghai Qianzhuo*, 2025 WL 2029309 at *1.

## II.    THE BALANCE OF EQUITIES DOES NOT FAVOR SUN.

### A.    Sun Cannot Show That He Will Suffer Irreparable Harm If the Motion Is Denied.

A plaintiff's inability to demonstrate irreparable harm absent a court order is itself grounds for denying emergency relief.  *See, e.g., Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017); *Black & Decker Corp. v. Am. Standard Inc.*, 679 F. Supp. 1183, 1193-94 (D. Del. 1988).  Here, Sun cannot demonstrate irreparable harm for many reasons.

First, the Motion is moot.  Bloomberg already published the cryptocurrency breakdown before Sun even filed suit.  Ex. 1.  Any harm Sun claims from publication cannot be undone by court order—the information has been public for more than a month.  *Id.*[4]  Tellingly, Sun's original motion recognized this.  It quoted *A.A. v. New Jersey*, 176 F. Supp. 2d 274, 307 (D.N.J. 2001):  "'Once this protected information is disclosed to the general public via the Internet, it will permanently and irreversibly be stripped of its confidential status" and "*there is no legal or equitable remedy available to retrieve this information and prevent its further dissemination*.'"  D.I. 4

---

[4] It is no answer that Bloomberg has a paywall.  Mot. 17.  Bloomberg has hundreds of thousands of subscribers, and other news organizations reported the same information.  Exs. 3-9.  And Sun's assertion that the forthcoming Bloomberg Businessweek article could include additional financial information, Mot. 7, fails in the face of the clear statement from Bloomberg's in-house counsel, which Sun cannot contest, that that the new article would use no financial information provided by Sun for the Index profile beyond what was already published in the Index profile, Ex. 2.

at 14 (Sun's Aug. 11, 2025 Motion) (emphasis added). Sun's renewed Motion retained the case citation but omitted the now-inconvenient quotation. Mot. 17. Sun was right the first time; the Motion is moot.

Second, the assertion that Bloomberg's publication of two sentences that another journalist described as "VERY rough estimates of his crypto holdings," Ex. 5, put Sun "at imminent risk of theft, hacking, kidnapping, and bodily harm," Mot. 17, is baseless.

Sun supports his claims of harm with the declaration of investment advisor Cliff Koutsky. Notably, the renewed Motion merely resubmitted Koutsky's old August 11 declaration, an indication that Sun had no concrete harms to report from the thirty days in which the information has been public. In addition, Bloomberg has submitted the responsive declaration of its cryptocurrency editor stacy-marie ishmael, which demonstrates point by point why Koutsky's claims are overstated and inaccurate. *See* ishmael Decl. ¶¶ 8-25.

Sun also asserts that publishing specific amounts of his cryptocurrency holdings poses threats to his financial privacy and safety because it can lead to the identification of his IDs for cryptocurrency transactions on the blockchain and his cryptocurrency wallet addresses. Mot. 8 & n. 2&3. Bloomberg published *none* of these things. And Sun himself has publicly disclosed far more specific information about his cryptocurrency holdings. If merely stating the rough amount of a type of

cryptocurrency he owns could lead to theft and bodily harm, he would not on February 27, 2024 have publicly posted that he has a balance of 3,597,257 Bitcoin on the HTX exchange:



ishmael Decl. ¶ 13(b).

Sun ignores that a number of other websites regularly track and report on his specific cryptocurrency wallet addresses precisely because he is a public figure and there is an interest in cryptocurrency trading. *Id.* ¶ 13(d-e), 15-16. Indeed, earlier this month, a CoinDesk article reported on specific Sun wallet addresses that had been blocked by World Liberty Financial and rather than object to the disclosure of the information, Sun gave a comment on the substance of the article. *Id.* ¶ 17.

If this other far more detailed information about his cryptocurrency holdings, including specific transactions and wallet addresses, has not endangered his life or his finances, the two-sentence Bloomberg summary could not have done so.

In addition, when an initial typo in the Index profile undervalued Sun's holdings at 700,000 Tether instead of 700 million, Sun instructed his counsel to request a *correction*, which Bloomberg implemented.  Maloney Decl. ¶¶ 49-50.  Sun would never have taken that action if reporting his holdings at this level of generality really put his life or finances in danger.

Third, the listing of harms in the Koutsky declaration could not possibly flow from the two sentences in Bloomberg's Index profile.  For example, the kidnappings discussed in the article attached to the Koutsky declaration came about because criminals were aware that the victims had substantial cryptocurrency holdings *generally*, not because they had access to specific information such as their wallet addresses.  *See* D.I. 22-1, 22-2, 22-4; ishmael Decl. ¶ 22.  And the risks of social engineering that a retail cryptocurrency investor might fall victim to simply do not apply to a sophisticated billionaire with a team of people to manage and safeguard his holdings.  ishmael Decl. ¶ 23-24.

Finally, the Motion underscores the absence of irreparable harm by adding the assertion that Sun will be harmed by *inaccurate* information about the extent of his TRON holdings.  Mot. 11.  But harm from inaccurate information is not cognizable here because Sun has not brought a defamation claim or any claim based on the publication of false information.  Sun cannot avoid the protections the First Amendment gives to defendants in defamation cases by complaining about false

21

information but avoiding calling it defamation. Those protections apply "to all claims whose gravamen is the alleged injurious falsehood of a statement." *Blatty v. N.Y. Times Co.*, 728 P.2d 1177, 1182-83 (Cal. 1986). And in any event, "[t]he usual rule is that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages." *Organovo*, 162 A.3d at 118 n.67 (citation omitted).

### B. The Motion Seeks an Unconstitutional Prior Restraint and Bloomberg Will Suffer Irreparable Harm If It Is Granted.

"[C]ourt orders that actually forbid speech activities—are classic examples of prior restraints." *Alexander v. United States*, 509 U.S. 544, 550 (1993). These restrictions on speech "are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

"In all but the most exceptional circumstances, an injunction restricting speech pending final resolution of constitutional concerns is impermissible." *CapStack Nashville 3 LLC v. MACC Venture Partners*, 2018 WL 3949274, at *4 (Del. Ch. Aug. 16, 2018) (alteration and citations omitted). "The reason is straightforward: while such an injunction is in force, it restrain[s] even speech that may ultimately prove to be protected." *Id.* (quotation omitted); *see Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 390 (1973) ("The special vice of a prior restraint is that communication will be suppressed, either directly or

by inducing excessive caution in the speaker, before an adequate determination that it is unprotected by the First Amendment.").

The United States Supreme Court has never upheld a prior restraint in any case like this one involving pure speech.[5]  Sun's brief proves the point.  He fails to cite even a single case in which a court granted the relief he seeks:  an injunction against a news organization to censor an allegedly actionable news publication.  That is because such a temporary or preliminary injunction is unconstitutional, as courts routinely hold.[6]

---

[5] *E.g.*, *In re Providence J. Co.*, 820 F.2d 1342, 1348, 1350 (1st Cir. 1986) ("In its nearly two centuries of existence, the Supreme Court has never upheld a prior restraint on pure speech" or "on publication of news."); Erwin Chemerinsky, *Injunctions in Defamation Cases*, 57 Syracuse L. Rev. 157, 173 (2007) ("[N]ever in the 216 year history of the First Amendment has the Supreme Court found it necessary to uphold a prior restraint in a defamation case or any other."); *Hurvitz v. Hoefflin*, 101 Cal. Rptr. 2d 558, 567 (Ct. App. 2000) ("[W]e are aware of no case in any jurisdiction in which a prior restraint has been imposed to prevent an intrusion into privacy.").

[6] *See, e.g.*, *CBS Inc. v. Davis*, 510 U.S. 1315, 1317-18 (1994) (Blackmun, J., in chambers) (rejecting state court preliminary injunction against a television broadcast); *Meador v. New Times, Inc.*, 36 F.3d 1103 (9th Cir. 1994) (denying injunction as unconstitutional prior restraint in case for defamation and false light); *In re King World Prods., Inc.*, 898 F.2d 56, 59 (6th Cir. 1990) (vacating TRO against broadcast of news program as unconstitutional prior restraint, despite claim of invasion of privacy); *Russell v. Del. Online*, 2016 WL 3437597, at *5 (D. Del. June 20, 2016) (denying motion for temporary restraining order and preliminary injunction to take down articles from various news sites).

Here, Sun proposes an unconstitutional prior restraint in two ways. First, an injunction barring Bloomberg from publishing a future article about Sun would be a quintessential prior restraint. *CapStack*, 2018 WL 3949274, at \*4 (proposed injunction against future speech is prior restraint). Second, the compelled removal of Bloomberg's published Article constitutes a prior restraint because it prohibits the ongoing republication of speech that otherwise would have been available online. *See, e.g., Garcia v. Google, Inc.*, 786 F.3d 733, 747 (9th Cir. 2015) (en banc) (injunction to remove YouTube video would be "classic prior restraint of speech").

Such a prior restraint would violate Bloomberg's First Amendment rights, and "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976). And "[t]he damage can be particularly great when," as here, "the prior restraint falls upon the communication of news and commentary on current events." *In re Charlotte Observer*, 921 F.2d 47, 49 (4th Cir. 1990) (per curiam); *CBS Inc.*, 510 U.S. at 1317 (similar). This irreparable harm necessarily outweighs the minor (and unsubstantiated) harms claimed by Sun. *See supra*.

Sun argues that his tort claims mean Bloomberg's statements are undeserving of First Amendment protection. Mot. 18-20. But at best that could only be true *after* the speech has been "finally adjudicated," *Vance v. Universal Amusement Co.*, 445 U.S. 308, 316 (1980) (per curiam), *i.e.*, not at this preliminary juncture. That is

24

precisely why the *prior* restraint doctrine is necessary. *See, e.g.*, *id.*; *CapStack*, 2018 WL 3949274, at *4 (warning that since preliminary injunctions "are granted based on less evidence and less deliberation, the danger that the court will get it wrong and mistakenly restrict protected speech is even greater") (citation omitted). Every single case cited by Sun in support of his unsuccessful effort to downplay the harm faced by Bloomberg is inapposite for this reason. Not a single one involved a comparable motion for temporary restraining order or preliminary injunctive relief. Mot. 18-19.[7]

## III. AN UNCONTITUTIONAL INJUNCTION IS NOT IN THE PUBLIC INTEREST.

A prior restraint is "both offensive to the First Amendment and contrary to the public interest." *Page v. Oath Inc.*, 2018 WL 1474620, at *1 (S.D.N.Y. Mar. 26, 2018). "An injunction against speech harms not just the speakers but also the . . . readers." *McCarthy v. Fuller*, 810 F.3d 456, 462 (7th Cir. 2015). Where damages are available for a claim over a journalist's alleged promise, Mot. 21, no countervailing public interest in injunctive relief exists.

---

[7] The only case in this section of Sun's brief that even discusses injunctions is *Democratic National Committee v. Republican National Committee*, an election litigation case that is inapposite; it concerned whether to modify a *consent decree* that had been in place *for decades* between the Republican National Committee and Democratic National Committee. 673 F.3d 192, 196 (3d Cir. 2012).

## **CONCLUSION**

The Motion should be denied.

Dated: September 19, 2025

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ James M. Yoch, Jr.*
James M. Yoch, Jr. (Bar No. 5251)
Robert M. Vrana (Bar No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6726
jyoch@ycst.com
rvrana@ycst.com

Thomas G. Hentoff (pro hac vice)
Nicholas G. Gamse (pro hac vice)
Tiffany Keung (pro hac vice)
Ian M. Swenson (pro hac vice)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
(202) 434-5000
thentoff@wc.com
ngamse@wc.com
tkeung@wc.com
iswenson@wc.com

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SUN, YUCHEN JUSTIN, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| v. | ) C.A. No. 25-1007-CFC |
| | ) |
| BLOOMBERG L.P. and BLOOMBERG INC., | ) |
| | ) |
| Defendant(s). | ) |

**CERTIFICATION OF COMPLIANCE
WITH TYPE, FONT, AND WORD LIMITATIONS**

This brief complies with the Court's Standing Order Regarding Briefing in

All Cases as modified by the Court's September 19, 2025 Order. D.I. 32. It has

been prepared in Times New Roman 14-point type, and contains 5,785 words,

which were counted by Microsoft Word.

**YOUNG CONAWAY STARGATT
& TAYLOR, LLP**

Dated: September 19, 2025          */s/ James M. Yoch, Jr.* _____

James M. Yoch, Jr. (Bar No. 5251)
Robert M. Vrana (Bar No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6726
jyoch@ycst.com
rvrana@ycst.com

Thomas G. Hentoff (*pro hac vice*)
Nicholas G. Gamse (*pro hac vice*)
Tiffany Keung (*pro hac vice*)
Ian M. Swenson (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
(202) 434-5000
thentoff@wc.com
ngamse@wc.com
tkeung@wc.com
iswenson@wc.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 19, 2025, a copy of the

foregoing document was served on the counsel listed below in the manner

indicated:

**<u>BY EMAIL</u>**

Jeffrey J. Lyons
BAKER & HOSTETLER LLP
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
jjlyons@bakerlaw.com

Isabelle Corbett Sterling
BAKER & HOSTETLER LLP
Transamerica Pyramid Center
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
isterling@bakerlaw.com

Teresa Goody Guillen
Katherine L. McKnight
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 100
Washington, D.C. 20036
tgoodyguillen@bakerlaw.com
kmcknight@bakerlaw.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ James M. Yoch, Jr.*
James M. Yoch, Jr. (No. 5251)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
jyoch@ycst.com
rvrana@ycst.com

*Attorneys for Defendants*