IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUN, YUCHEN JUSTIN, <br><br> Plaintiff, <br><br> v. <br><br> BLOOMBERG L.P. and BLOOMBERG INC., <br><br> Defendants. | Civil Action No. 25-1007-CFC |

**DECLARATION OF MUYAO SHEN
IN SUPPORT OF DEFENDANTS' OPPOSITION
TO PLAINTIFF'S MOTION FOR A TEMPORARY
RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

I, Muyao Shen, declare:

1. I am a reporter at Bloomberg News ("Bloomberg"). This declaration is based on my personal knowledge and documents kept by me in the ordinary course of my work for Bloomberg. If called as a witness, I could and would testify competently to these facts under oath.

2. I am a cryptocurrency and decentralized finance reporter at Bloomberg, based out of Bloomberg's headquarters in New York City, NY. I have worked at Bloomberg since February 2022.

3. Prior to joining Bloomberg, I worked as the Senior Markets Reporter at

1

CoinDesk. I have worked as a journalist specializing in cryptocurrency and markets since I graduated from the Columbia University Graduate School of Journalism in 2018.

4. In the course of my reporting on the cryptocurrency industry, I have covered Plaintiff Justin Sun for some time.

5. On February 3, 2025, I contacted Mr. Sun via WeChat, an instant messaging platform, and asked to interview him. I asked him "Hi Justin! Are you in Hong Kong during the week of March 3? I want to schedule a time with you for an interview?"[1]

6. On February 4, 2025, Mr. Sun's publicist informed me that he was unavailable for a Bloomberg interview because he had committed to an exclusive interview with another publication.

7. On February 7, 2025, I messaged Mr. Sun via WeChat and proposed an interview after his embargo period was over.

8. Later on February 7, 2025, Mr. Sun called me. We spoke by phone for approximately 5 minutes. Mr. Sun called to apologize that he was presently unable to sit for an interview with me because of the embargo with the other publication.

9. During that phone call, Mr. Sun never brought up confidentiality or

---

[1] My correspondence with Mr. Sun was in Mandarin Chinese. For purposes of this declaration, I have translated those messages into English for the Court's convenience.

expressed any concerns to me regarding it.

10. The February 7, 2025 call was the only time we spoke by phone in February (as my WeChat call log confirms).

11. Over the course of the next few weeks, we exchanged WeChat messages on various topics. Mr. Sun also sent me a few voice messages. I have copies of all of these communications.

12. On February 12, 2025, I sent a WeChat message to Mr. Sun and for the first time proposed that Bloomberg might feature him in the Bloomberg Billionaire Index. Specifically, I said: "I know you may feel hesitant because you think the reporting from the mainstream media outlets is relatively negative and lack a brand new angle. For our story, we pitched a relatively new angle which is the Billionaire index - Bloomberg has a Billionaire index and I know you currently are not on it. We contacted the index team and wanted to do an analysis of your value and see if you can join the index. Typically, if a name is added to the index, we'd do a profile story to understand how he or she's made money to become a billionaire. I wanted to see what you think."[2]

---

[2] I am aware that Mr. Sun attests that we spoke on a "WeChat call" about the Bloomberg Billionaire Index on February 11. Sun Decl. ¶ 5. My WeChat call log proves that this is incorrect. We only had a single call in February, on February 7. In addition, my February 12 WeChat message shows that I first suggested the Bloomberg Billionaire Index on February 12; the message is clear that we had not previously discussed the topic.

3

13. Mr. Sun promptly responded on the same day, saying "understood ok".

14. On February 26, I sent an email introducing Mr. Sun's publicist Sprina Wang to my Bloomberg colleague who works on the Bloomberg Billionaires Index, Dylan Sloan.

15. After that introduction, I had very limited involvement in Bloomberg's preparation of the Bloomberg Billionaires Index report on Mr. Sun: I provided feedback on the profile after it was drafted.

16. Mr. Sun and I continued to communicate via WeChat about other topics, including a potential interview for a separate article. We spoke by WeChat phone on March 3, March 26, March 27, and July 29.

17. During the conversations on March 27 and July 29, Mr. Sun raised concerns regarding his coverage in the Bloomberg Billionaires Index. But at no time did I ever make any promises of confidentiality regarding any aspects of Bloomberg's coverage of Mr. Sun, either with regard to coverage in my own articles, or coverage in the Bloomberg Billionaires Index (on which I was not even working). Instead, I informed him that I could only convey his feedback to my colleagues who were responsible for that report.

18. I have reviewed the Complaint and Amended Complaint in the above-captioned matter and am generally familiar with the allegations contained therein.

19. I am aware that Mr. Sun has alleged that "In February 2025, Plaintiff

had multiple conversations with Ms. Shen. During those conversations, Plaintiff communicated his significant confidentiality and data security concerns. Ms. Shen told Plaintiff that any information Plaintiff provided to Bloomberg for the purpose of verifying his personal wealth would be kept strictly confidential and would only be used to verify his personal assets for the Billionaires Index profile." Am. Compl. ¶ 18.

20. This allegation is demonstrably false.

21. As described above, we did not discuss the Bloomberg Billionaires Index in our February 7 phone call. Indeed, our WeChat messages prove that this allegation is impossible. The messages show that I raised the Bloomberg Billionaires Index for the first time on February 12, and my WeChat call log confirms that we had no further phone calls in February.

22. In addition, I never spoke with Mr. Sun between the dates I originally suggested he participate in the Bloomberg Billionaires Index (February 12) and the date I understand his team shared information regarding his assets with my Bloomberg Billionaires Index colleagues (February 28).

23. Thus, it is clear from my WeChat call log and message history that his team shared his asset information with the Bloomberg Billionaires Index team without relying on any assurance from me.

24. I am also aware that Mr. Sun has alleged that "Based on Ms. Shen's

5

representations, Plaintiff was led to believe that the only information that would be reported about his assets in the Billionaires Index profile was the total value of his cryptocurrency holdings, and the general asset types and sources of his wealth. Plaintiff understood, based on Ms. Shen's assurances, that his cryptocurrency holdings would be reported as a single lump sum amount and identified generally as 'cryptocurrency' holdings." Am. Compl. ¶ 19.

25. This allegation is also demonstrably false for similar reasons. My WeChat call and message records prove that Mr. Sun's team shared his asset information with the Bloomberg Billionaires Index team without relying on any assurance from me. For the avoidance of doubt, I never told Mr. Sun that "his cryptocurrency holdings would be reported as a single lump sum amount and identified generally as 'cryptocurrency' holdings."

26. Nor did I make any promises to Mr. Sun regarding how he would be covered in that March 27 and July 29 to convey concerns regarding his coverage in the Bloomberg Billionaires Index; I never made any promises to Mr. Sun regarding how he would be covered in that report.

27. To be clear, I never offered Mr. Sun any promise of confidentiality whatsoever in connection with his participation in the Bloomberg Billionaires Index profile. It would have made no sense for me to do so given that I had no involvement in writing that profile, aside from helping to provide feedback after it was written.

28. I am working on a separate Bloomberg Businessweek article regarding Mr. Sun, which is still in development.

I declare under penalty of perjury under laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Date: September 18, 2025

_____
Muyao Shen

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 19, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Jeffrey J. Lyons
BAKER & HOSTETLER LLP
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
jjlyons@bakerlaw.com

Isabelle Corbett Sterling
BAKER & HOSTETLER LLP
Transamerica Pyramid Center
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
isterling@bakerlaw.com

Teresa Goody Guillen
Katherine L. McKnight
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 100
Washington, D.C. 20036
tgoodyguillen@bakerlaw.com
kmcknight@bakerlaw.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *James M. Yoch, Jr.*
James M. Yoch, Jr. (No. 5251)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
jyoch@ycst.com
rvrana@ycst.com

*Attorneys for Defendants*