# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SUN, YUCHEN JUSTIN,<br><br>Plaintiff,<br><br>v.<br><br>BLOOMBERG L.P. and BLOOMBERG INC.,<br><br>Defendants. | Civil Action No. 25-1007-CFC |

### DECLARATION OF STACY-MARIE ISHMAEL
### IN SUPPORT OF DEFENDANTS' OPPOSITION
### TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING
### ORDER AND A PRELIMINARY INJUNCTION

I, stacy-marie ishmael, declare:

1. I am an executive editor at Bloomberg News ("Bloomberg"). This declaration is based on my personal knowledge and my experience researching, analyzing, and explaining issues relating to cryptocurrencies. If called as a witness, I could and would testify competently to these facts under oath.

2. I am the executive editor for digital assets/digital payments/cross asset at Bloomberg, based out of Bloomberg's headquarters in New York City, NY. I have worked at Bloomberg since September 2021.

3. As part of my job responsibilities, I lead teams of reporters and editors

covering the fast-evolving world of cryptocurrencies, blockchain, and decentralized finance. For the past four years, a substantial part of my job has been to research, analyze, and explain the world of cryptocurrency to Bloomberg's financially sophisticated readers. I have been a business journalist for nearly 20 years, with extensive experience covering complex financial products for both specialist and general audiences, in addition to a background in software development and technology.

4.      I have reviewed the August 11, 2025 declaration of Clifford Koutsky, which was initially submitted in support of the plaintiff's motion for a temporary restraining order and a preliminary injunction and then resubmitted unchanged in support of the plaintiff's renewed motion on September 11. Based on my years of reporting, study, and research into the field of cryptocurrency, I have technical and specialized knowledge about cryptocurrency technology, business, and finance issues. I have been asked to review and respond to Mr. Koutsky's declaration and I have done so relying on the facts and data set forth below. My analysis is accurate to the best of my ability, based on my knowledge and experience.

5.      Cryptocurrencies are digital currencies designed to work through computer networks using blockchain technology. Major examples include Bitcoin and Ethereum, which my team covers extensively among many others. Justin Sun, the plaintiff in this lawsuit, is a well-known major holder of cryptocurrencies,

including TRON, a cryptocurrency he founded.

6. I am familiar with Bloomberg's Billionaires Index, which provides information about the holdings of some of the world's wealthiest people. I also have reviewed the Index report about Mr. Sun that Bloomberg published on Monday, August 11, 2025, which includes information about certain of his cryptocurrency holdings. The Index is not part of my portfolio at Bloomberg, however, and I had no involvement in reviewing or access to any of the data or information provided by Mr. Sun for the preparation of the Index report. I understand that Bloomberg published the report approximately two hours before Mr. Sun filed his lawsuit and his motion for a temporary restraining order and that the report has remained available online continuously since then.

7. Cryptocurrency ownership records are stored on a blockchain, which is a decentralized database typically operated across and accessible via a computer network. Owners of cryptocurrencies can maintain and control their holdings via wallets, which can be either physical devices or software that store public and/or private keys for cryptocurrency transactions.

8. Mr. Koutsky states that his declaration is based on his knowledge of cryptocurrency and blockchains and he claims that Bloomberg's publication of certain information about Mr. Sun's cryptocurrency holdings created five types of "dangers" for Mr. Sun: loss of financial privacy, wealth exposure and social

3

engineering, kidnapping and ransom threats, digital attacks, and de-anonymization. I disagree fundamentally with Mr. Koutsky's analysis, which I find to be overstated, misleading, and contrary to known public facts about Mr. Sun's cryptocurrency holdings and public activities and the nature of cryptocurrencies.

9.  I also understand that Mr. Koutsky's declaration was written before Bloomberg's report about Mr. Sun was published (although his declaration was submitted to the Court after publication). Thus, while Mr. Koutsky's declaration speculated about the consequences of publishing "a characteristically distinctive amount of cryptocurrency on chain," Koutsky Decl. ¶ 5, the Bloomberg report published no such thing. Instead, the report states that, based on information that Mr. Sun's representatives provided in February 2025, he owns "more than" a round number of TRON in the billions, "about" a round number of Bitcoin in the thousands, and "about" round numbers of Ether and Tether coins in larger amounts. These are not characteristically distinctive amounts. Significantly, the Bloomberg report did not publish any addresses for any of Mr. Sun's cryptocurrency wallets, even though a number of websites have regularly published just such information about him without his public objection.

10. In addition, in response to Mr. Koutsky's assertions about supposed "dangers" to Mr. Sun from reporting specific information about his cryptocurrency holdings, it is also important to emphasize that the relevant question is what are the

supposed dangers of the information that Bloomberg published *compared to* the extensive information about Mr. Sun's cryptocurrency holdings that was already public.

11.     Mr. Koutsky states that "Blockchain activity is inherently transparent and traceable, publicly revealing even just the amount of crypto held can lead to de-anonymization," including by indirectly leading to the identification of wallet addresses. Koutsky Decl. ¶¶ 4. I have three observations about this statement. First, the very fact that blockchain activity is *inherently* transparent and traceable means that cryptocurrency holders understand they cannot demand the same type of financial secrecy available with other types of holdings. There is inherently an already greatly diminished expectation of privacy.

12.     Second, Mr. Koutsky offers no support at all for the proposition that the *non-precise* figures in the Bloomberg feature, using terms like "about" and "more than," would in fact lead to de-anonymization of Mr. Sun's wallets. He has provided no evidence to back up this claim.

13.     Third, Mr. Sun has regularly and publicly made statements that include references to his cryptocurrency holdings with similar or more specificity than that provided in the Bloomberg report. These include:

   a.     Courting public recognition and attention by participating in the Donald Trump Memecoin Leaderboard, which required holding a certain amount of

5

the Trump token over time, and publicly stating in May 2025 he holds $18.6 million in $TRUMP tokens. *See* https://www.cnbc.com/2025/05/20/justin-sun-trump-dinner.html

        b.    In a February 27, 2024 post on X/Twitter with a reported 1.5 million views, identifying precisely how much Bitcoin he held on the HTX cryptocurrency exchange:

[Screenshot of X/Twitter post by H.E. Justin Sun 🧑‍🚀 (Astronaut Version) @justinsuntron: "My personal HTX account balance (just for those who are saying I'm not using HTX much) @HTX_Global" showing 3597257 BTC = 1624085323.24 USD, 0695532.87 USD(+4.28%), Profit Analysis, Convert Small. 9:53 AM · Feb 27, 2024 · 1.5M Views. 1K replies, 873 reposts, 3.5K likes, 316 bookmarks.]

This public disclosure by Mr. Sun of specific Bitcoin holdings on one exchange *in itself* disproves all five "dangers" about which Mr. Koutsky's declaration speculates. It shows that Mr. Sun was perfectly comfortable making specific disclosures of the amount of his holdings of one cryptocurrency on one exchange and did not worry about loss of financial privacy, wealth exposure and social engineering, kidnapping and ransom threats, digital attacks on custody, and de-anonymization. On top of Mr. Sun's many other public disclosures of his cryptocurrency holdings, the cumulative effect of Bloomberg's *less-specific*

disclosures cannot contribute to any alleged dangers to him.

        c.      Another example includes Mr. Sun's November 25, 2024 post on X/Twitter with a reported 3.3 million views, stating that he invested $30 million in World Liberty Financial:



        d.      This public information release by Mr. Sun was also tagged on a service known as Etherscan, which is a public database of transactions conducted on the Ethereum blockchain. Etherscan's administrators, known as "curators," apply Name Tags and Labels to significant Ethereum transactions according to their internal guidelines, which state that "Etherscan curators evaluate the owner's interest

7

in displaying their address publicly or whether the address is of public interest. Etherscan will only display Name Tags for individuals when they have publicly declared their ownership of an address." (http://info.etherscan.com/public-name-tags-labels/)

    e. Etherscan used Mr. Sun's tweet about the transaction to identify the transaction and provide the address of a TRON DAO wallet used by Mr. Sun. (See annotation "This address was tagged based on this tweet" at https://etherscan.io/address/0x5ab26169051d0d96217949adb91e86e51a5fda74). Again, these public disclosures provide substantially more detail about his cryptocurrency holdings than the Bloomberg Index report does, including a wallet address:

| | |
|---|---|
| **TRANSACTION ACTION** | $30 Million Investment in World Liberty Financial By Justin Sun ↗ |
| Transaction Hash: | 0x0560495eb3986a085e7f595302f1c35297acbe60aab9c4405664c3ccfb7601cc |
| Status: | ✅ Success |
| Block: | ✅ 21266207   1873503 Block Confirmations |
| Timestamp: | 🕒 261 days ago (Nov-25-2024 05:17:35 PM UTC) |
| Sponsored: | Rainbet — No.1 Casino & Sportsbook — 20k Weekly Raffle Free Entry — Claim Ticket! |
| From: | 0x5AB26169051d0D96217949ADb91E86e51a5FDA74 (TRON DAO) |
| Interacted With (To): | 0xe217E15b3C19cC0427F9492dC3bcfe8220aFAD10 ✅ |
| ERC-20 Tokens Transferred: 3 | All Transfers / Net Transfers<br>▸ From TRON DAO To 0xe217E15b...220aFAD10 For 30,000,000 ($29,994,750.00) USDC (USDC)<br>▸ From 0xe217E15b...220aFAD10 To World Liberty: Multisig For 30,000,000 ($29,994,750.00) USDC (USDC)<br>▸ From 0xe217E15b...220aFAD10 To TRON DAO For 2,000,000,000 World Libert... (WLFI) |
| Value: | ♦ 0 ETH ($0.00) |
| Transaction Fee: | 0.004488145487701194 ETH  $20.81 |
| Gas Price: | 20.199674546 Gwei (0.000000020199674546 ETH) |

8

14.   Mr. Koutsky states: "Since most centralized exchanges follow KYC (Know Your Customer) regulations, they typically hold personally identifiable information (PII) and linked banking details of the wallet owner."  Koutsky Decl. ¶ 6.  It is important to emphasize that the published Bloomberg report did not include addresses or any details of any kind regarding Mr. Sun's crytpocurrency wallets.  In addition, the report omitted accounting for any tokens that might be held on an exchange.  The Bloomberg Index report explained: "The analysis only includes tokens that are on-chain.  Tokens that are held on exchanges such as HTX and Binance are not included in the analysis because the holdings could not be verified."

15.   Mr. Koutsky states that it is often possible to identify linked wallets through various techniques, and tools like "Chainalysis, TRM Labs, and Elliptic specialize in facilitating this process." Koutsky Decl. ¶¶ 7-8.  But these tools are already available publicly, as Mr. Koutsky acknowledges, and are already used by governments, journalists, and others to gain information about cryptocurrency asset holdings and transfers.  The pre-existing public availability of these tools further demonstrates the greatly diminished expectation of secrecy understood by sophisticated holders.  For example, the public website provided by a similar blockchain analysis firm called Arkham has a page devoted to information about Mr. Sun's cryptocurrency holdings and activities that is far more detailed than the limited information published by Bloomberg:

9



See https://intel.arkm.com/explorer/entity/justin-sun (last visited Sept. 16, 2025).

16. For a further example: using similar tools, the website Nansen in February 2025 published a similarly detailed analysis of Mr. Sun's cryptocurrency holdings, noting that: "Sun's trading activities often create significant market movements. *His wallet addresses are closely watched by traders and analysts*, as large transfers can signal potential market shifts." (Emphasis added.) *See* https://www.nansen.ai/post/justin-suns-crypto-net-worth.

17. News coverage of Mr. Sun's specific cryptocurrency transactions includes a September 4, 2025 CoinDesk article reporting that the operators of the World Liberty Financial cryptocurrency company "blacklisted Justin Sun's *blockchain address* with *595 million unlocked WLFI tokens*, blockchain data shows." https://www.coindesk.com/tech/2025/09/04/world-liberty-financial-blacklists-justin-sun-s-address-with-usd107m-wlfi (emphasis added). The same

10

article referred to "several outbound transactions *from Sun's address*, including one worth *$9 million*," and reported Mr. Sun's response that the transactions "couldn't have any market impact," without any public objection by him to the reporting of his wallet activity. *Id* (emphasis added).

18. Accordingly, by virtue of Mr. Sun's own many public disclosures of his specific cryptocurrency holdings and the extensive tools already available to and used to track Mr. Sun's holdings, there is no factual basis to claim that Bloomberg's publication of far less specific information could pose any of the listed "dangers" to Mr. Sun.

19. I am also aware that after initial August 11, 2025 publication of the Bloomberg Billionaires Index report on Mr. Sun, counsel for Mr. Sun made a request that further disproves his contention that that providing specific information about his cryptocurrency exposes him to danger. Although Bloomberg's calculation of Mr. Sun's holdings was accurate, the report initially contained a typo in the display of the amount of the cryptocurrency Tether that he owned. Mr. Sun's counsel requested that Bloomberg correct the 700,000 Tether figure to 700 million Tether. As Bloomberg was able to verify that it had made an error in displaying the amount of Mr. Sun's Tether holdings, on August 15, 2025, Bloomberg made the correction to its Index report. The request by Mr. Sun's counsel to correct the amount of Tether he owned is fundamentally inconsistent with Mr. Sun's contention that the level of

11

specificity included in the Index report exposes him to danger.

20. To the extent that I have not already specifically addressed Mr. Koutsky's claims of loss of financial privacy, wealth exposure and social engineering, kidnapping and ransom threats, digital attacks, and de-anonymization, Koutsky Decl. ¶¶ 10-14, I add the following observations:

21. Mr. Sun is a highly visible, extremely wealthy, longtime, and very sophisticated cryptocurrency investor. He is in a position of leadership at two different crypto exchanges and a founder of TRON, which engaged in an initial coin offering in 2017. This level of wealth and visibility over a significant period of time means that he is already in a position in which he faces these dangers based on his own public statements about his wealth, investments, and crypto transactions

22. The examples provided in Mr. Koutsky's declaration about a cryptocurrency holder who was kidnapped or threatened indicated that their assailants targeted them because of *general* knowledge of their wealth in cryptocurrencies, *not* the prior direct or indirect disclosure of wallet addresses or similar information. Koutsky Decl. ¶ 12, Exs. A-D. By that logic, Mr. Sun, like all individual cryptocurrency holders who publicize their wealth, already faced possible threats of that nature. To suggest that Bloomberg's non-specific publication increased that risk at all is a red herring.

23. Similarly, I am aware from my reporting and experience that extremely

wealthy and sophisticated cryptocurrency investors like Mr. Sun already have a variety of tools and strategies at their disposal to reduce the "dangers" identified in Mr. Koutsky's declaration. These methods may include distributing cryptocurrency holdings across a number of different wallets, maintaining carefully protected offline "cold wallets," using multifactor authentication on all accounts including emails and mobile providers, among others.

24. In addition, cryptocurrency holders of Mr. Sun's wealth and experience already are aware of the hacking and deception dangers identified by Mr. Koutsky and use sophisticated methods to combat such threats. And, as I have noted above, nothing in the Bloomberg report exacerbated any such dangers. A cryptocurrency billionaire with a team of money managers is not at the same risk of social engineering schemes as a retail cryptocurrency holder.

25. Finally, Mr. Koutsky suggests that if a cryptocurrency holder is scammed out of their finds, there is "little or no" recourse. Koutsky Decl. ¶ 15. This is misleading. To share a significant recent example: After an extortion attempt involving Coinbase customer support agents based overseas, the crypto exchange said it would reimburse affected customers. (*See* https://www.coinbase.com/blog/protecting-our-customers-standing-up-to-extortionists)

I declare under penalty of perjury that the foregoing is true and correct to the

best of my knowledge.

Dated: September 18, 2025

stacy-marie ishmael

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 19, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

| | |
|---|---|
| Jeffrey J. Lyons<br>BAKER & HOSTETLER LLP<br>1201 N. Market Street, Suite 1407<br>Wilmington, DE 19801<br>jjlyons@bakerlaw.com | Isabelle Corbett Sterling<br>BAKER & HOSTETLER LLP<br>Transamerica Pyramid Center<br>600 Montgomery Street, Suite 3100<br>San Francisco, CA 94111<br>isterling@bakerlaw.com<br><br>Teresa Goody Guillen<br>Katherine L. McKnight<br>BAKER & HOSTETLER LLP<br>1050 Connecticut Avenue, NW<br>Suite 100<br>Washington, D.C. 20036<br>tgoodyguillen@bakerlaw.com<br>kmcknight@bakerlaw.com |

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ James M. Yoch, Jr.*
James M. Yoch, Jr. (No. 5251)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
jyoch@ycst.com
rvrana@ycst.com

*Attorneys for Defendants*