IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| YUCHEN JUSTIN SUN,<br><br>Plaintiff,<br><br>v.<br><br>BLOOMBERG, L.P., and<br>BLOOMBERG, INC.,<br><br>Defendants. | Civil Action No. 25-1007-CFC |

# MEMORANDUM ORDER

Plaintiff Yuchen Justin Sun has sued Defendants Bloomberg, L.P. and Bloomberg, Inc. (collectively, Bloomberg) for public disclosure of private facts and promissory estoppel. D.I. 30. Sun alleges in the operative First Amended Complaint that Bloomberg committed these torts when it published a profile of Sun that disclosed amounts of specific cryptocurrency he owns. *See* D.I. 30 ¶¶ 16, 33, 61–68, 69–76.

Pending before me is Sun's second motion for a temporary restraining order and preliminary injunction. D.I. 18.

I.

On August 11, 2025, after months of working to verify Sun's assets, Bloomberg published Sun's profile in its Billionaires Index, "a ranked list of the

world's richest people." D.I. 30 ¶¶ 3, 36.  Two sentences of the profile are at issue here:

> Sun owns more than 60 billion Tronix (also referred to as TRON or TRX), the cryptocurrency native to Tron, according to an analysis of financial information provided by representatives of Sun in February 2025. . . . Sun also owns about 17,000 Bitcoin, 224,000 Ether, and 700 million Tether, according to the same analysis.

https://www.bloomberg.com/billionaires (cited in D.I. 30 at 4 n.1); *see also* D.I. 35-1 at 8–9.  According to Sun, (1) Bloomberg's publication of "the alleged specific amounts of cryptocurrencies" he owns constitutes a public disclosure of private facts, D.I. 30 ¶¶ 33, 61–68, and (2) Bloomberg is estopped from publishing "financial information regarding the value of specific assets and details related to [his] ownership of those assets" because it promised him that it would not publicize "the amounts of specific cryptocurrency" he owns and that it "would take measures to protect [his] Confidential Financial Information from disclosure," D.I. 30 ¶¶ 16, 69–76.

    Within hours of Bloomberg's publication of the profile, Sun filed in this Court his initial Complaint (D.I. 1) and a motion for a temporary restraining order and preliminary injunction (D.I. 3).  He withdrew the motion three days later because, according to Sun, the parties were "engaged in discussions" that may have mooted the motion.  D.I. 15.  Those discussions apparently did not go well, however, because on September 11, Sun filed the instant motion, seeking a

temporary restraining order and preliminary injunction requiring Bloomberg (1) "to remove the amounts of any specific cryptocurrency owned by Mr. Sun from any of its online publication," (2) "to retract its claim that Mr. Sun owns 60 billion Tronix and controls the majority of its supply," and (3) to refrain from "publishing the amounts of any specific cryptocurrency owned by Mr. Sun in any future publication." D.I. 18

## II.

Like a preliminary injunction, a temporary restraining order is an "extraordinary and drastic remedy . . . that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in the original) (quoting 11A Wright & Miller § 2948). To obtain either form of relief, a movant must establish that (1) it is likely to succeed on the merits, (2) it will suffer irreparable harm without preliminary relief, (3) the balance of equities favors it, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Generally, the moving party must establish the first two factors and only if these gateway factors are established does the district court consider the remaining two factors." *Greater Phila. Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 133 (3d Cir. 2020) (internal quotation omitted).

III.

Sun has not established the gateway factors of success on the merits and irreparable harm. I therefore need not, and do not, reach the remaining two factors.

To begin, Sun has not made a clear showing that he is likely to succeed on the merits of his promissory estoppel claim. To prevail on this claim, Sun would have to "demonstrate by clear and convincing evidence" that (1) Bloomberg made a promise; (2) it was the reasonable expectation of Bloomberg to induce action or forbearance on the part of Sun; (3) Sun reasonably relied on the promise and took action to his detriment; and (4) such promise is binding because injustice can be avoided only by enforcement of the promise. *See Chrysler Corp. (Delaware) v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1032 (Del. 2003) (citation omitted).

Sun makes several attempts to establish the first element of his promissory estoppel claim—that Bloomberg made a promise. Each fails. He first asserts that in the conversations that "predated his decision to participate in the Billionaires Index, Bloomberg made express promises that any information provided to Bloomberg would only be used to verify his personal assets." D.I. 19 at 13. In support of this proposition, Sun cites his own declaration in which he states that Muyao Shen, a Bloomberg reporter, "told [him] that any information [he] provided to Bloomberg for the purpose of verifying [his] personal wealth would be kept

4

strictly confidential and would only be used to verify [his] personal assets for the Billionaires Index profile." D.I. 21 ¶ 6.

Bloomberg counters with declarations of its own. Muyao Shen, the reporter who Sun asserts made express promises regarding confidentiality, attests in a declaration that she did not "make any promises of confidentiality regarding any aspects of Bloomberg's coverage of Mr. Sun." D.I. 36 ¶ 17. Two members of Bloomberg's Billionaires Index team, Dylan Sloan and Tom Maloney, also attest that they never "promised confidentiality in connection with the information Mr. Sun and his team were sharing with Bloomberg for the Bloomberg Billionaires Index." D.I. 38 ¶ 11; D.I. 34 ¶ 10. On this record, I cannot say that Sun has made a clear showing that Bloomberg "made express promises that any information provided to Bloomberg would only be used to verify his personal assets."

Sun next asserts that Bloomberg's promise "that any information provided to Bloomberg would only be used to verify his personal assets" was "echoed in [its] repeated assurances of privacy and protection of [his] information." D.I. 19 at 13. In support of this proposition, Sun cites the following Telegram messages between

his team and Dylan Sloan from Bloomberg:

> 07:51
> Timothy
> Dylan Are there any Security & Privacy policies to prevent data leakage in your/BBG side? If have, Pls let's know the details.
>
> DS
>
> 09:39
> Dylan Sloan
> Sure. Anytime I'll be accessing the data, it'll be within the Bloomberg office, which is a secure network. We work with Arkham Intelligence for crypto valuations—they have a custom API for us to automate the process of logging historical wallet transactions. My plan was to run the wallet addresses through that
>
> T
>
> 09:54
> Timothy
> Got. We also hope that only trust & limited people have access right for the documents, which can maximize the protection of our data.
>
> DS
>
> 10:00
> Dylan Sloan
> Yes, definitely.
> 3 March 2025

D.I. 23-2 at 1.

> 09:26
> Dylan Sloan
> Hi Yeweon--got it, thanks. Would be great to meet in person! Will likely be another week or two before we're at that stage, I'll let you know.
> ♥
> YP
> 09:30
> Also--just wanted to double check that our plan for analyzing Justin's historical transactions is OK. Arkham Intelligence built a custom API for Bloomberg which allows us to compile data on token transfers and conversions to fiat for the wallet addresses you provided. That API is located on our internal network, meaning the file of Justin's wallet addresses won't leave our office and the only people who have access are my team and the engineers who manage the API (Arkham won't have access). Are you all OK with that plan as it relates to data security?

D.I. 23-2 at 2. These messages, however, appear to concern data security; they do not show clearly that Bloomberg made a promise to refrain from publishing details about Sun's cryptocurrency holdings.

Finally, Sun says that his "review of the other Billionaires Index profiles" corroborated Bloomberg's promise of confidentiality. D.I. 19 at 14. But to state a claim for promissory estoppel, the promise must "be reasonably definite and certain"; "mere expressions of expectation, opinion, or assumption are

6

insufficient." *Territory of U.S. V.I. v. Goldman, Sachs & Co.*, 937 A.2d 760, 804 (Del. Ch. 2007), *aff'd*, 956 A.2d 32 (Del. 2008). And here, to the extent Sun relied on the contents of other Bloomberg profiles of billionaires, he at most made an assumption or formed an expectation. Those profiles—even when coupled with Sun's communications with Bloomberg—do not amount to a "reasonably definite and certain" promise of confidentiality.

In short, on this record, Sun has not shown clearly that Bloomberg made a promise of confidentiality. He therefore has not shown clearly that he is likely to succeed on the merits of his promissory estoppel claim.

Next up is Sun's claim for public disclosure of private facts. To prevail on this claim, Sun would need to prove: (1) public disclosure, (2) of a private fact, (3) which would be offensive and objectionable to the reasonable person, and (4) which is not of legitimate public concern. *Grubbs v. Univ. of Del. Police Dep't*, 174 F. Supp. 3d 839, 861 (D. Del. 2016).

Regarding the third element, Sun asserts that Bloomberg's publication of his cryptocurrency assets "to millions of online readers and [threats] to further publicize it in an additional article" would be highly offensive to a reasonable person because "the knowledge of what cryptocurrency [he] owns makes him an increased target for hacking, phishing, social engineering, kidnapping, or bodily injury." D.I. 19 at 16. But before Bloomberg published Sun's profile, other

7

entities, including Nansen, provided similar (if not more detailed) estimates of Sun's assets. *See* D.I. 37 ¶¶ 15–16. And Sun himself has disclosed far more specific information about his Bitcoin holdings than what Bloomberg published:

> H.E. Justin Sun 🚀 (Astronaut Version) ✅
> @justinsuntron
>
> My personal HTX account balance (just for those who are saying I'm not using HTX much) @HTX_Global
>
> 3597257 BTC
>
> 9:53 AM · Feb 27, 2024 · **1.5M** Views
>
> 1K    873    3.5K    316

D.I. 37 ¶ 13(b).

Accordingly, at this stage, I cannot say that Bloomberg's publication of estimates of Sun's cryptocurrency holdings—information that is arguably less specific than what other entities and Sun himself have made public—would be objectively offensive to a reasonable person. Thus, Sun has failed to show clearly that he is likely to succeed on the merits of his public disclosure of private facts claims.

Turning to the second gateway factor, Sun makes two arguments as to why he will suffer irreparable harm absent emergency relief. He first says that Bloomberg's publication of his cryptocurrency assets puts him "at imminent risk of

theft, hacking, kidnapping, and bodily harm." D.I. 19 at 17. This argument fails for at least two reasons. First, in support of this assertion, Sun cites a declaration dated August 11, D.I. 22 at 5—the day Bloomberg published his profile and he filed his first motion seeking a temporary restraining order and preliminary injunction. But if Sun were truly at risk of theft, hacking, kidnapping, and bodily harm absent emergency relief, he would have submitted declarations documenting how those supposed risks materialized in the time between when he filed his first motion seeking emergency relief and the instant motion; instead, he is comfortable resting on a declaration that was thirty days old when he filed this motion. Second, Sun's own highly detailed disclosure of his Bitcoin assets undercuts his representation that he is now under threat because Bloomberg published estimates of his cryptocurrency holdings.

Sun next says that "the publication of false information regarding [his] TRX holdings poses a serious threat to his reputation, business relationships, and ongoing commercial endeavors." D.I. 19 at 17. But Sun did not sue Bloomberg for defamation or any other claim premised on the publication of false information. Accordingly, I find that Sun has not made a clear showing that he will suffer irreparable harm absent emergency relief.

Because Sun has not established either of the requisite "gateway factors," I need not reach whether the balance of equities favors Sun and whether an

9

injunction is in the public interest. *Greater Phila. Chamber of Com.*, 949 F.3d at 133.

\* \* \* \*

NOW THEREFORE, at Wilmington on this Twenty-second day of September in 2025, it is HEREBY ORDERED that Sun's Renewed Motion for Temporary Restraining Order and Preliminary Injunction (D.I. 18) is DENIED.

_____
CHIEF JUDGE