# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| SUN, YUCHEN JUSTIN, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | C.A. No. 25-1007-CFC |
| | ) | |
| BLOOMBERG L.P. and | ) | |
| BLOOMBERG INC., | ) | |
| | ) | |
| Defendant(s). | ) | |

## DEFENDANTS' MOTION TO DISMISS
## <u>PLAINTIFF'S AMENDED COMPLAINT</u>

## **TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................1

FACTUAL BACKGROUND & NATURE AND STAGE OF
      PROCEEDINGS.........................................................................................2

LEGAL STANDARD................................................................................5

ARGUMENT ...........................................................................................6

I.     NEW YORK LAW GOVERNS SUN'S CLAIMS. ......................................6

II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR PUBLIC
       DISCLOSURE OF PRIVATE FACTS. ........................................11

III.   THE COMPLAINT FAILS TO STATE A CLAIM FOR
       PROMISSORY ESTOPPEL. .......................................................16

CONCLUSION ......................................................................................21

# TABLE OF AUTHORITIES

## CASES

*374-76 Prospect Place Tenants Ass'n, Inc. v. City of New York*, 222 N.Y.S.3d 477 (2d Dep't 2024).............................................................17

*Barbieri v. News-J. Co.*, 189 A.2d 773 (Del. 1963) ...................................6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).......................................5

*Benak ex rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P.*, 435 F.3d 396 (3d Cir. 2006) ......................................................................16

*Boring v. Google Inc.*, 362 F. App'x 273 (3d Cir. 2010) ...................14, 16

*Brooks v. Fiore*, 2001 WL 1218448 (D. Del. Oct. 11, 2001).................21

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256 (3d Cir. 2006) .................3, 15, 19

*Chisholm v. Foothill Cap. Corp.*, 3 F. Supp. 2d 925 (N.D. Ill. 1998)....................16

*Chrysler Corp. (Delaware) v. Chaplake Holdings, Ltd.*, 822 A.2d 1024 (Del. 2003) .....................................................................16

*Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118 (N.D. Cal. 2002)...............15

*Davis v. Abington Mem'l Hosp.*, 765 F.3d 236 (3d Cir. 2014)..................5

*Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156 (Del. 2010) .........................17

*Essick v. Barksdale*, 882 F. Supp. 365 (D. Del. 1995) ..............................6

*Evans v. TheHuffingtonPost.com, Inc.*, 2023 WL 5275383 (D. Del. Aug. 16, 2023) ....................................................................................10

*Fisher v. Perron*, 30 F.4th 289 (6th Cir. 2022).......................................15

*Frey v. Minter*, 829 F. App'x 432 (11th Cir. 2020)...................................9

*Ganske v. Mensch*, 480 F. Supp. 3d 542 (S.D.N.Y. 2020) ........................3

*Grubbs v. Univ. of Del. Police Dep't*, 174 F. Supp. 3d 839 (D. Del. 2016) .....................................................................................12, 14

*Howell v. New York Post Co.,* 81 N.Y.2d 115 (1993) ............................................11

*In re Morrow Park Holding LLC*, 2020 WL 3415649 (Del. Ch. June 22, 2020) ...........................................................................................................19

*James Cable, LLC v. Millennium Digit. Media Sys., L.L.C.*, 2009 WL 1638634 (Del. Ch. June 11, 2009)...............................................18

*Jenkins v. Dell Pub. Co.*, 251 F.2d 447 (3d Cir. 1958).....................................13, 14

*Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348 (S.D.N.Y. 1998) ......................11

*JPMorgan Chase Bank, N.A. v. Nowak*, 2025 WL 1938541 (S.D.N.Y. July 15, 2025) ...........................................................................11

*Kinsey v. New York Times Co.*, 991 F.3d 171 (2d Cir. 2021)................................8, 9

*Lee ex rel. Lee v. Choice Hotels Int'l Inc.*, 2006 WL 1148737 (Del. Super. Ct. Mar. 21, 2006) .................................................................11

*Levin v. McPhee*, 917 F.Supp. 230 (S.D.N.Y. 1996)................................................9

*Lowe v. Hearst Commc'ns, Inc.*, 487 F.3d 246 (5th Cir. 2007).............................13

*Martin v. Widener Univ. Sch. of Law*, 1992 WL 153540 (Del. Super. Ct. June 4, 1992) ...................................................................................13

*McKenzie v. Navy Fed. Credit Union*, 760 F. Supp. 3d 146 (D. Del. 2024) .................................................................................................3, 20

*Metro. Convoy Corp. v. Chrysler Corp.*, 208 A.2d 519 (Del. 1965).......................18

*Neuberger v. Gordon*, 567 F. Supp. 2d 622 (D. Del. 2008) .....................................3

*Paucek v. Shaulis*, 349 F.R.D. 498 (D.N.J. 2025) ..................................................10

*Prince v. Intercept*, 634 F. Supp. 3d 114 (S.D.N.Y. 2022) .......................................8

*Ramsey v. Fox News Network*, L.L.C., 351 F. Supp. 2d 1145 (D. Colo. 2005) ................................................................................................8

*Reardon v. News-J. Co.*, 164 A.2d 263 (Del. 1960)................................................12

*Sabby Volatility Warrant Master Fund Ltd. v. Jupiter Wellness, Inc.*,
2025 WL 1363171 (2d Cir. May 12, 2025) ........................................................19

*Sarver v. Chartier*, 813 F.3d 891 (9th Cir. 2016) ........................................................8

*Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724 (11th Cir. 2011) ..........................14

*Sweigert v. Goodman*, 2024 WL 4493768 (S.D.N.Y. Oct. 11, 2024) ......................6

*Territory of U.S. V.I. v. Goldman, Sachs & Co.*, 937 A.2d 760 (Del.
Ch. 2007) .............................................................................................17, 19, 20

*Turner v. Lipschultz*, 619 A.2d 912 (Del. 1992) ........................................................7

*UbiquiTel Inc. v. Sprint Corp.*, 2005 WL 3533697 (Del. Ch. Dec. 14,
2005) .........................................................................................................10

*Unsworth v. Musk*, 2019 WL 5550060 (N.D. Cal. Oct. 28, 2019) ..........................3

*Vichi v. Koninklijke Philips Electronics, N.V.*, 85 A.3d 725 (Del. Ch.
2014) ..........................................................................................................6

*VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79 (Del. 1998) ........................................21

*Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100 (3d Cir.
2018) ..........................................................................................................6

*Weinstein v. Friedman*, 1996 WL 137313 (S.D.N.Y. Mar. 26, 1996) ...................10

*Wilcher v. City of Wilmington*, 60 F. Supp. 2d 298 (D. Del. 1999).......................13

*Wolf v. Regardie*, 553 A.2d 1213 (D.C. 1989) ........................................................13

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) ........................................................*passim*

Restatement (Second) of Conflict of Laws (1971) ...........................................*passim*

Restatement (Second) of Torts (1979)...................................................................13

iv

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Justin Sun sued Defendants Bloomberg L.P. and Bloomberg Inc. ("Bloomberg"), and sought emergency relief, over two sentences in a Bloomberg Billionaires Index profile that listed approximate amounts of his holdings of three types of cryptocurrency. On September 22, 2025, this Court rejected Sun's TRO motion based on his failure to show either likelihood of success on the merits or irreparable harm. D.I. 39 (TRO Order) at 4-10. Bloomberg now moves to dismiss the Amended Complaint ("Am. Compl.") under Federal Rule of Civil Procedure 12(b)(6) because Sun's two claims, for public disclosure of private facts and promissory estoppel, both fail to state a claim upon which relief can be granted.

First, Sun's public disclosure of private facts claim fails because New York law, which applies under Delaware's choice of law rules, does not recognize that tort. And Sun in any event cannot satisfy the elements of the claim under Delaware law. *See infra* at 11-16.

Second, Sun's promissory estoppel claim fails because he does not and cannot plausibly allege that Bloomberg made a reasonably definite and certain promise not to publish the cryptocurrency breakdown, that Bloomberg made such a promise with the intent to induce Sun to provide his financial data to Bloomberg, or that Sun reasonably relied on such a promise in producing his financial data. *See infra* at 16-20.

Even when taken as true, the facts as alleged by Sun in a complaint and an amended complaint cannot satisfy the requirements for a public disclosure of private facts or promissory estoppel claim. The Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND & NATURE AND STAGE OF PROCEEDINGS

Sun "is a successful entrepreneur in the blockchain and cryptocurrency industry," who is known as the founder of TRON, "one of the most active open blockchain platforms in the world with over 300 million accounts." Am. Compl. ¶ 2. Sun was "interested in being featured" in the Billionaires Index ("Index") a series of "profiles for each of the world's 500 richest people" published by Bloomberg at its principal place of business in New York. *Id.* ¶¶ 7-8, 15 n.1, 17. To be considered for inclusion in the Index, individuals must give Bloomberg "financial information regarding the value of specific assets" for "verification purposes." *Id.* ¶ 16. The Index profiles include "a detailed analysis" of how each individual's "fortune is tallied." *Id.* n.1.[1] Sun alleges that he "carefully reviewed" these profiles and then agreed to be featured in the Index. *Id.* ¶ 20.

---

[1] *See* Ex. 1 at 38, *Bloomberg Billionaires Index*, Bloomberg, available at https://www.bloomberg.com/billionaires/ and incorporated by reference in Sun's Complaint n.1 ("each individual billionaire profile contains a detailed analysis of how that person's fortune is tallied"). The following documents are properly before the Court on a Rule 12(b)(6) motion to dismiss: (1) documents incorporated into the Complaint by reference, such as the Billionaire's Index, *see McKenzie v. Navy Fed.*

On February 28, 2025, Timothy Chung, Sun's representative for Bloomberg's wealth verification process, provided Bloomberg reporter Dylan Sloan with Sun's financial information.  *See* Am. Compl. ¶¶ 23-24; D.I. 23-2 (Wang Declaration Ex. B).  Sun now alleges that conversations with Bloomberg reporters about his "confidentiality and data security concerns" as well as his "careful[] review[]" of "other profiles on the Billionaire's Index" led him to believe that Bloomberg would only report on "the total value of his cryptocurrency holdings, and the general asset types and sources of his wealth," such that "his cryptocurrency holdings would be reported as a single lump sum amount."  Am. Compl. ¶¶ 18-20.  Sun further alleges that after his team shared the financial data on February 28, 2025, his team sought additional assurances about the use and confidentiality of that data.  Am. Compl. ¶¶ 25-28; *see also* D.I. 23-2.

---

*Credit Union*, 760 F. Supp. 3d 146, 150 (D. Del. 2024); (2) documents subject to judicial notice, including public records such as court filings, *see Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); and (3) the existence of public social media posts, *see Ganske v. Mensch*, 480 F. Supp. 3d 542, 546 (S.D.N.Y. 2020); *Unsworth v. Musk*, 2019 WL 5550060, at *4 (N.D. Cal. Oct. 28, 2019).  On a motion to dismiss, the court may take judicial notice of the existence of public records in a legal proceeding, and it may take notice of public articles "to indicate what was in the public realm at the time," but not for the truth of the facts therein. *Neuberger v. Gordon*, 567 F. Supp. 2d 622, 631 (D. Del. 2008).

"On August 11, 2025, after months of working to verify Sun's assets, Bloomberg published Sun's profile in its Billionaires Index." TRO Order at 1; Am. Compl. ¶ 36; Ex. 2 (Sun profile).

After the Index article was published, Sun filed this lawsuit and his original motion for emergency relief on August 11, 2025. D.I. 3. Sun takes issue with two sentences of the Billionaires Index profile:

> Sun owns more than 60 billion Tronix (also referred to as TRON or TRX), the cryptocurrency native to Tron, according to an analysis of financial information provided by representatives of Sun in February 2025. . . . Sun also owns about 17,000 Bitcoin, 224,000 Ether, and 700 million Tether, according to the same analysis.

TRO Order at 2.

Sun voluntarily withdrew this motion three days later while the parties discussed Sun's correction request. TRO Order at 2. On September 11, 2025, Sun renewed the motion, which asked that the Court compel Bloomberg to "remove the amounts of any specific cryptocurrency owned by Mr. Sun from any of its online publications," "retract its claim that Mr. Sun owns 60 billion Tronix," and enjoin Bloomberg from "publishing the amounts of any specific cryptocurrency owned by Mr. Sun in any future publication."[2] D.I. 18 at 1-2. On September 22, 2025, the

---

[2] In his Complaint, Sun also identifies a forthcoming Bloomberg Businessweek article it he alleges will "include the Cryptocurrency Breakdown" and will increase the risk of harm he might suffer. Am. Compl. ¶¶ 39-41. The article was published on September 26, 2025. Zeke Faux & Muyao Shen, *A Crypto Billionaire's Path*

Court denied Sun's request for a temporary restraining order and his request for a preliminary injunction. The Court found that Sun failed to make a clear showing of (1) likelihood of success on the merits on his promissory estoppel claim and his public disclosure of private facts claim and (2) irreparable harm. TRO Order at 4, 9-10.

## LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Though detailed factual allegations are not required, a complaint must do more than simply provide labels and conclusions or a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quotation marks omitted). A Rule 12(b)(6) motion should be granted if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). In addition, allegations need not be accepted as true where they are contradicted by exhibits or documents incorporated into the complaint. *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111-12 (3d Cir. 2018).

---

*From Pariah to Trump Moneyman*, Bloomberg Businessweek (Sept. 26, 2025), https://tinyurl.com/bdfua2rz.

## ARGUMENT

New York law has the more significant relation to Sun's lawsuit and should be applied in lieu of Delaware law.  But under either New York or Delaware law, Sun's allegations fail to state a claim for either public disclosure of private facts or promissory estoppel.[3]

## I.    NEW YORK LAW GOVERNS SUN'S CLAIMS.

Although Sun applied Delaware law in his TRO briefing without addressing choice of law, such analysis is necessary here.  D.I. 19 at 12-16.  In a suit based on diversity of citizenship, federal courts apply the forum's choice of law doctrine. *Essick v. Barksdale*, 882 F. Supp. 365, 369 (D. Del. 1995).  Delaware courts begin by comparing the laws of the competing jurisdictions to determine whether the laws conflict, and apply Delaware law where no conflict exists.  *Vichi v. Koninklijke Philips Electronics*, *N.V.*, 85 A.3d 725, 773 (Del. Ch. 2014).  The most significant conflict here is that Delaware recognizes the claim of public disclosure of private facts, but no such claim exists under New York state law.  *Compare Barbieri v. News-J. Co.*, 189 A.2d 773, 774 (Del. 1963) *with Sweigert v. Goodman*, 2024 WL 4493768, at *6 (S.D.N.Y. Oct. 11, 2024).

---

[3] Although the Complaint alleges that purportedly false statements about Sun's TRON holdings harmed him,  Am. Compl. ¶¶ 37, 52, 55-59, "Sun did not sue Bloomberg for defamation or any other claim premised on the publication of false information," TRO Order at 9.

For conflict of law in torts, Delaware courts apply the "most significant relationship" test from the Restatement (Second) of Conflict of Laws (1971) ("Restatement"). *Turner v. Lipschultz*, 619 A.2d 912, 914-15 (Del. 1992). Tort claims premised on an aggregate communication published in multiple states, such as multistate defamation or invasion of privacy, carry a presumption that the law of plaintiff's domicile should govern because that is "usually" where the plaintiff suffers the greatest injury. Restatement § 153 cmt. (d).[4] However, this presumption is rebutted where, "with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties." Restatement § 153 cmt. (b). To make this determination, courts consider factors such as the state where plaintiff suffered his greatest injury, the state where defendant did his "acts of communication, such as assembling, printing, and distributing a magazine or book," and "the state or states of the defendant's domicile, incorporation or organization and principal place of business." Restatement § 153 cmt. (d). Finally, courts consider the interests of the states and "the purpose sought to be achieved by their relevant local law rules." Restatement § 153 cmt. (b). Application of these factors demonstrates that New York law should apply.

---

[4] The choice of law rules for multi-state defamation claims and multi-state invasion of privacy claims are the same. *See* Restatement § 153 cmt. (d).

First, Sun's domicile is not a significant factor here. The Restatement acknowledges that when injury is alleged due to a multistate communication, there is "little reason in logic or persuasiveness to say that one state rather than another is the place of injury." Restatement § 145 cmt. (e). In such cases of mass dissemination, "the tort essentially lacks a locus" because it "injures plaintiff everywhere at once." *Kinsey v. New York Times Co.*, 991 F.3d 171, 178 (2d Cir. 2021) (quotation marks omitted); *see also Sarver v. Chartier*, 813 F.3d 891, 899 (9th Cir. 2016) (plaintiff's injuries occurred in multiple states because allegedly defamatory film was distributed nationwide, therefore his domicile state did not have the most significant relationship to the claim); *Prince v. Intercept*, 634 F. Supp. 3d 114, 133 (S.D.N.Y. 2022) (similar).

That is the case here: Sun alleges broad harms to his physical safety and professional reputation that are global in nature, and does not allege that he suffered specific injury in his domicile of Hong Kong, in the state of Delaware, or any other state. Am. Compl. ¶¶ 6, 56-59. Because the Article "was distributed nationwide . . . 'the place of injury will *not* play an important role in the selection of the state of applicable law.'" *Sarver*, 813 F.3d at 897 (quoting Restatement § 145 cmt. (e)); *Ramsey v. Fox News Network*, L.L.C., 351 F. Supp. 2d 1145, 1149 (D.

Colo. 2005) (declining to apply law of plaintiff's domicile state because plaintiff failed to allege specific injury in that state).[5]

The second and third factors strongly favor the application of New York law, because the newsgathering and publication actions at the center of Sun's complaint took place in New York, which is also Bloomberg's principal place of business.  Am. Compl. ¶¶ 7-8, 15 n.1.  In *Kinsey*, the Second Circuit affirmed the district court's holding that New York had the most significant relationship to the defamation claim because defendant, the New York Times, had its principal place of business in New York, meaning the "alleged defamatory statement emanated from New York."  991 F.3d at 178; *see also Levin v. McPhee*, 917 F.Supp. 230, 236 (S.D.N.Y. 1996) (applying New York law under the most significant relationship test because the publication of allegedly libelous statements "took place in New York, where the author reside[d] and where both publishers [were] headquartered").  Because the statements at issue in Sun's complaint emanated from New York, New York law should apply to his claims.  *See, e.g., Frey v. Minter*, 829 F. App'x 432, 434-36 (11th Cir. 2020) (the state where the challenged statement was published had the most significant relationship to the multistate defamation claim).

---

[5] Notably, in his TRO papers, Sun asserts that Delaware law, not Hong Kong law, applies.  D.I. 19 at 12-16.

Moreover, Bloomberg's strong New York connections outweigh its formation in Delaware because, "[at] least with respect to most issues, a corporation's principal place of business is a more important contact than the place of incorporation," especially when "the corporation does little, or no, business in the latter place." Restatement § 145 cmt. (e); *see also UbiquiTel Inc. v. Sprint Corp.*, 2005 WL 3533697, at *4 (Del. Ch. Dec. 14, 2005) (similar); *Paucek v. Shaulis*, 349 F.R.D. 498, 523-24 (D.N.J. 2025) (defendant's state of incorporation was "a relatively weak factor for purposes of the most significant relationship test").

Finally, the last factor also weighs heavily in favor of New York law. New York is "the national center of the publishing industry," and has a strong interest in protecting the free speech rights of those publishers, like Bloomberg. *Weinstein v. Friedman*, 1996 WL 137313, at *7 (S.D.N.Y. Mar. 26, 1996), *aff'd*, 112 F.3d 507 (2d Cir. 1996) (applying New York law due to the state's interest in "provid[ing] a hospitable climate for the free exchange of ideas") (quotation marks omitted). Relatedly, "New York has a strong interest in enforcing its anti-strategic litigation against public participation ('anti-SLAPP') statute," which was designed "to provide the utmost protection for the free exercise or [sic] speech, petition, and association rights, particularly where such rights are exercised in a public forum with respect to issues of public concern." *Evans v. TheHuffingtonPost.com, Inc.*, 2023 WL

5275383, at *4 (D. Del. Aug. 16, 2023) (quotation marks omitted), *aff'd*, 2024 WL 3949070 (3d Cir. Aug. 27, 2024).

Delaware on the other hand, has a much weaker policy interest in enforcing its privacy tort brought by a Hong Kong citizen against a Delaware corporation with its principal place of business in New York. *See, e.g.*, *Lee ex rel. Lee v. Choice Hotels Int'l Inc*., 2006 WL 1148737, at *2 (Del. Super. Ct. Mar. 21, 2006) (rejecting the argument that Delaware law should apply simply due to its interest in "governing franchisors which are corporate registrants of the State"); *Jewell v. NYP Holdings, Inc*., 23 F. Supp. 2d 348, 359-60 (S.D.N.Y. 1998) (applying New York law even though defendant was incorporated in Delaware).

Because the first factor is neutral and the second, third, and fourth factors support the application of New York law, the state with the most significant relationship to the case is New York.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR PUBLIC DISCLOSURE OF PRIVATE FACTS.

Sun's "public disclosure of private fact claim necessarily fails because New York common law does not recognize privacy torts such as public disclosure of private fact." *See JPMorgan Chase Bank, N.A. v. Nowak*, 2025 WL 1938541, at *7 (S.D.N.Y. July 15, 2025) (citing *Howell v. New York Post Co*., 81 N.Y.2d 115, 124 (1993)); *see supra* at 6.

Even if Delaware law were applied, Sun's claim would still fail.  In Delaware, a claim for the public disclosure of private facts requires proof of four elements:  (1) public disclosure, (2) of a private fact, (3) which would be offensive and objectionable to the reasonable person, and (4) which is not of a legitimate public concern.  *Grubbs v. Univ. of Del. Police Dep't*, 174 F. Supp. 3d 839, 861 (D. Del. 2016).  "A failure to prove any of these elements is a complete bar to liability."  *Id.* Here, Sun's claim fails because he fails to sufficiently allege that the information is not of legitimate public concern, and he does not sufficiently plead that the published information would be offensive to a reasonable person.  *See* TRO Order at 8 (holding that Sun "failed to show clearly that he is likely to succeed on the merits of his public disclosure of private facts claims").

First, Sun's claim should be dismissed because the information published by Bloomberg is newsworthy material of legitimate public concern, which is not actionable under Delaware law.  *See Reardon v. News-J. Co.*, 164 A.2d 263, 267 (Del. 1960) (claims for invasion of privacy are limited by "the freedom of the press, matters of legitimate public interest, matters involving public figures, the 'newsworthiness' of the article"); *Grubbs*, 174 F. Supp. 3d at 861 (dismissing private facts claim under Rule 12(b)(6) because press release reflected matter of public concern).  When, as here, an invasion of privacy claim is brought against a news publication, it is "so dangerous to circumscribe" the public's "unimpeded access to

news" that courts will dismiss such claims unless "the lack of any meritorious public interest in disclosure is *very clear* and its offensiveness to ordinary sensibilities is equally clear." *Jenkins v. Dell Pub. Co*., 251 F.2d 447 at 450, 452 (3d Cir. 1958); *see also Lowe v. Hearst Commc'ns, Inc*., 487 F.3d 246, 250-51 (5th Cir. 2007) (affirming Rule 12(b)(6) dismissal of public facts claim because "newsworthiness is to be construed broadly" to prevent "excessive judicial intervention" that could deprive the public of critical information);[6] *Martin v. Widener Univ. Sch. of Law*,1992 WL 153540, at *18 (Del. Super. Ct. June 4, 1992) ("The media has the right, guaranteed by the federal and state constitutions, to publish news and all matters of public concern").

Here, there is strong public interest in the net worth of the high-profile individuals featured in Bloomberg's Index, which covers other famous figures. *See* Am. Compl. n.2; *see also Wolf v. Regardie*, 553 A.2d 1213, 1220 n.12 (D.C. 1989) (there is legitimate public concern in the breakdown of an individual's financial assets). Indeed, Sun admits that he *chose* to participate based upon his review of other profiles. Am. Compl. ¶ 20. Sun cannot possibly show a "very clear" "lack of

---

[6] Defendants cite to jurisdictions outside of Delaware because the Court may look to the law of other states that have similarly adopted the claim of public disclosure of private facts from the Restatement. *See, e.g.*, *Wilcher v. City of Wilmington*, 60 F. Supp. 2d 298, 302 (D. Del. 1999) (stating that Delaware courts are like "other courts that have adopted the Restatement (Second) of Torts for invasion of privacy claims" and looking to case law from those other jurisdictions).

any meritorious public interest in disclosure," given that he was aware of and chose to participate in the series. *Jenkins*, 251 F.2d at 450.

In addition, there is a legitimate public interest in Sun's financial assets because he is a globally recognized cryptocurrency entrepreneur and the founder of TRON, "one of the most active open blockchain networks in the world." Am. Compl. ¶ 2. And given increased public scrutiny of cryptocurrency, there is also legitimate public interest in the approximate amount of TRON held by its founder, which may shed light on the currency's stability. Am. Compl. ¶¶ 56-58. Because the published information easily surpasses the low bar for newsworthy information that is guaranteed by the First Amendment, Sun's claim should be dismissed. *Jenkins*, 251 F.2d at 452; *Grubbs*, 174 F. Supp. 3d at 861 (granting motion to dismiss).

Second, Sun's claim should be dismissed for the additional reason that Bloomberg's high-level estimates of Sun's assets are not highly offensive to a reasonable person. Courts routinely dismiss private facts claims where the plaintiff has not alleged that the disclosure involved information that could meet this demanding test. *See, e.g.*, *Boring v. Google Inc.*, 362 F. App'x 273, 280 (3d Cir. 2010) (affirming Rule 12(b)(6) dismissal of private facts claim because plaintiff failed to allege that publicity was "highly offensive," making it unnecessary to address the other elements); *Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724, 726

(11th Cir. 2011) (similar); *Daly v. Viacom, Inc*., 238 F. Supp. 2d 1118, 1125 (N.D. Cal. 2002) ("plaintiff cannot, as a matter of law, demonstrate that the disclosure of the fact . . . is 'beyond the limits of decency'") (citation omitted); *see also Fisher v. Perron*, 30 F.4th 289, 297-98 (6th Cir. 2022) (conclusory allegation regarding disclosure of plaintiff's personal financial information was not sufficient to state a claim).

Although Sun alleges that the disclosure was uncomfortably specific, Am. Compl. ¶ 21, that allegation is hard to square with the Article itself, which included only numbers rounded to the nearest thousand tokens for Bitcoin and Ether, the nearest hundred thousand tokens for Tether, and the nearest billion tokens for Tronix.  In addition, as the Court noted in its Opinion denying Sun's motion for a TRO, "Sun himself has disclosed far more specific information about his Bitcoin holdings than what Bloomberg published."  TRO Order at 8.[7]  And other entities

---

[7] *See* Ex. 3, Justin Sun (@justinsuntron), X.com (Feb. 27, 2024, 9:53 AM), https://x.com/justinsuntron/status/1762491124692795709.  Courts can take judicial notice of public social media posts at the motion to dismiss stage.  *See supra* n.1.  In the alternative, the Court may take judicial notice of the existence of Sun's post as a matter of public record as part of court filings in this case.   *See* D.I. 37, 39; *Buck*, 452 F.3d at 260 (in evaluating a motion to dismiss, a court may consider "matters of public record, orders, [and] items appearing in the record of the case") (internal quotation omitted) (alteration in original).

have also published "similar (if not more detailed) estimates of Sun's assets." TRO Order at 8 citing D.I. 37 ¶¶ 15-16.[8]

Given that Sun and others have widely published more specific information about his cryptocurrency holdings, he cannot plausibly allege that Bloomberg's Index was "highly offensive" because such disclosures risk theft or bodily harm. Am. Compl. ¶ 64. *Boring*, 362 F. App'x at 280; *see Chisholm v. Foothill Cap. Corp.*, 3 F. Supp. 2d 925, 941 (N.D. Ill. 1998) (disclosure of fact could not be highly offensive since plaintiff made no effort to conceal the fact previously).

## III. THE COMPLAINT FAILS TO STATE A CLAIM FOR PROMISSORY ESTOPPEL.

A plaintiff asserting a claim for promissory estoppel must plausibly allege that: "(i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise." *Chrysler Corp. (Delaware) v. Chaplake Holdings, Ltd.*, 822 A.2d 1024,

---

[8] *See, e.g.,* Ex. 4, *Justin Sun*, Arkham, https://intel.arkm.com/explorer/entity/justin-sun (last visited Oct. 9, 2025); Ex. 5, *Justin Sun's Crypto Net Worth: A Look Into TRON CEO's Portfolio*, Nansen, https://www.nansen.ai/post/justin-suns-crypto-net-worth (last visited Oct. 9, 2025). This prior coverage is also subject to judicial notice for the fact of prior publication (the truth of the publications is not pertinent to Bloomberg's argument). *See supra* n.1; *Benak ex rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P.*, 435 F.3d 396, n.15 (3d Cir. 2006).

1032 (Del. 2003) (citation omitted).[9]  "The promise must also be reasonably definite and certain."  *Territory of U.S. V.I. v. Goldman, Sachs & Co.*, 937 A.2d 760, 804 (Del. Ch. 2007), *aff'd,* 956 A.2d 32 (Del. 2008).  "[M]ere expressions of expectation, opinion, or assumption are insufficient."  *Id*.  This claim fails for three reasons.

First, although Sun makes three factual allegations regarding a supposed promise—his communications with Shen, his review of past Index profiles, and his Telegram messages with Bloomberg—he fails to identify any "reasonably definite and certain" promise not to publish a breakdown of his cryptocurrency holdings.  *Territory of U.S. V.I.*, 937 A.2d at 804.

Sun alleges he "communicated his significant confidentiality and data security concerns" to Shen, and Shen told him the information "provided to Bloomberg for the purpose of verifying his personal wealth would be kept strictly confidential and would only be used to verify his personal assets for the Billionaires Index profile."  Am. Compl. ¶ 18.  It is clear that Sun understood that Bloomberg would publish some information about his cryptocurrency holding in the Index profile.  *Id.* ¶ 19.  And while Sun alleges Bloomberg made certain promises about how Bloomberg

---

[9] The elements of promissory estoppel are the same in New York and Delaware.  *See 374-76 Prospect Place Tenants Ass'n, Inc. v. City of New York*, 222 N.Y.S.3d 477, 481 (2d Dep't 2024).  Because there is no conflict, "the Court should avoid the choice-of-law analysis altogether" and apply Delaware law.  *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1161 (Del. 2010).

would secure his financial data, *id.* ¶¶ 18, 22, Sun does not plausibly allege Bloomberg made any promises regarding the detail with which Bloomberg would publish his cryptocurrency holdings. Even if Shen's "assurances" could be read as a promise of some confidentiality with respect to his cryptocurrency holdings, Am. Compl. ¶ 19, Sun's "extremely vague" description of Shen's alleged representations about what Bloomberg would publish in the Index does not "amount to a real promise" enforceable in court, *James Cable, LLC v. Millennium Digit. Media Sys., L.L.C.*, 2009 WL 1638634, at *5 (Del. Ch. June 11, 2009).

To bolster his vague allegations, Sun further alleges that, "[b]ased on Ms. Shen's assurances," he "understood . . . that his cryptocurrency holdings would be reported as a single lump sum amount and identified generally as 'cryptocurrency' holdings.'" *Id.* ¶ 19. But Sun's "assumption" or "expectation" regarding what Bloomberg would publish is insufficient to support a promissory estoppel claim. TRO Order at 7. *See also Metro. Convoy Corp. v. Chrysler Corp.*, 208 A.2d 519, 521 (Del. 1965).

Beyond his inadequate allegations regarding Shen, Sun alleges that based on his review of other profiles on the Index "he determined that the Billionaires Index does not generally disclose specific cryptocurrency holdings beyond bitcoin." Am.

Compl. ¶ 20.[10]  As the Court held in its TRO Opinion, "to the extent Sun relied on the contents of other Bloomberg profiles of billionaires, he at most made an assumption or formed an expectation.  Those profiles—even when coupled with Sun's communications with Bloomberg—do not amount to a 'reasonably definite and certain' promise of confidentiality."  TRO Order at 7 (citing *Territory of U.S. V.I.*, 937 A.2d at 804); *see also In re Morrow Park Holding LLC*, 2020 WL 3415649, at *19 (Del. Ch. June 22, 2020); *Sabby Volatility Warrant Master Fund Ltd. v. Jupiter Wellness, Inc.*, 2025 WL 1363171, at *3 (2d Cir. May 12, 2025) (applying Delaware law).

Sun also cites messages between his team and Bloomberg as evidence of further assurances of confidentiality.  Am. Compl. ¶¶ 22-30.  The Court may consider them here because they are "matters incorporated by reference [and] integral to the claims," *Buck*, 452 F.3d at 260.  As the Court already noted, the messages in the Telegram chat "appear to concern data security," and do not show "that Bloomberg made a promise to refrain from publishing details about Sun's cryptocurrency holdings."  TRO Order at 6.

---

[10] *But see supra*, n.1 citing *Bloomberg Billionaires Index* ("each individual billionaire profile contains a *detailed analysis of how that person's fortune is tallied*") (emphasis added).

Second, Sun does not plausibly allege that Bloomberg reasonably expected to induce Sun's action or forbearance.  Sun merely recites the legal standard for promissory estoppel, Am. Compl. ¶¶ 72-74, which the Court need not credit.  *See McKenzie v. Navy Fed. Credit Union*, 760 F. Supp. 3d 146, 151 (D. Del. 2024) ("When a plaintiff essentially repeats statutory language" or "invokes legal terms" the Court is "faced with conclusions and no facts." (quotation marks omitted)).  His allegations regarding what *he* "understood," e.g., Am. Compl. ¶ 19, do not address what *Bloomberg* intended.

Third Sun does not allege that he reasonably relied to his detriment—as noted above, Sun does not plausibly allege Bloomberg made a "reasonably definite and certain" promise regarding how it would publish his cryptocurrency holdings, *Territory of U.S. V.I.*, 937 A.2d at 804.  Bloomberg's alleged promises concern how Bloomberg would secure Sun's data.  *See* Am. Compl. ¶¶ 18, 22; D.I. 23-2.  Sun does, however, allege that he "carefully reviewed other profiles on the Billionaires Index to see the extent of personal financial details published by Bloomberg, particularly as it related to cryptocurrency holdings."  Am. Compl. ¶ 20.  "Based on [this] review" Sun "determined that the Billionaires Index does not generally disclose specific cryptocurrency holdings beyond bitcoin."  *Id.*  But Sun's decision to proceed was based on his independent investigation, not what Bloomberg promised.  Because Sun did not "actually rel[y] on [a] promise" by Bloomberg not

to publish the cryptocurrency breakdown when Sun provided his financial data, his claim fails. *VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 87 (Del. 1998); *Brooks v. Fiore*, 2001 WL 1218448, at *6 (D. Del. Oct. 11, 2001), *aff'd,* 53 Fed. App'x 662 (3d Cir. 2002).[11]

## **<u>CONCLUSION</u>**

For the reasons stated, the Complaint should be dismissed with prejudice.

Dated: October 9, 2025

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Robert M. Vrana*
James M. Yoch, Jr. (Bar No. 5251)
Robert M. Vrana (Bar No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6726
jyoch@ycst.com
rvrana@ycst.com

Thomas G. Hentoff (pro hac vice)
Nicholas G. Gamse (pro hac vice)
Tiffany Keung (pro hac vice)
Ian M. Swenson (pro hac vice)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024

---

[11] The Complaint alleges that "[a]n additional article featuring Mr. Sun's Cryptocurrency Breakdown" is forthcoming, Am. Compl. ¶¶ 39-41, but asserts no specific claims as to the then-unpublished article. Bloomberg Businessweek subsequently published that article on September 26, 2025. *See supra* n.2. It included the same cryptocurrency breakdown as the Index profile, which, for the reasons stated above, does not support a claim for public disclosure of private facts or promissory estoppel.

(202) 434-5000
thentoff@wc.com
ngamse@wc.com
tkeung@wc.com
iswenson@wc.com

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| SUN, YUCHEN JUSTIN, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | C.A. No. 25-1007-CFC |
| | ) | |
| BLOOMBERG L.P. and BLOOMBERG INC., | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

## CERTIFICATION OF COMPLIANCE
## WITH TYPE, FONT, AND WORD LIMITATIONS

This brief complies with the Court's Standing Order Regarding Briefing in All Cases. It has been prepared in Times New Roman 14-point type, and contains 4,998 words, which were counted by Microsoft Word.

Dated: October 9, 2025

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Robert M. Vrana*
James M. Yoch, Jr. (Bar No. 5251)
Robert M. Vrana (Bar No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6726
jyoch@ycst.com
rvrana@ycst.com

Thomas G. Hentoff (*pro hac vice*)
Nicholas G. Gamse (*pro hac vice*)

Tiffany Keung (*pro hac vice*)
Ian M. Swenson (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
(202) 434-5000
thentoff@wc.com
ngamse@wc.com
tkeung@wc.com
iswenson@wc.com

*Counsel for Defendants*

2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 9, 2025, a copy of the

foregoing document was served on the counsel listed below in the manner

indicated:

<u>BY EMAIL</u>
Jeffrey J. Lyons
BAKER & HOSTETLER LLP
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
jjlyons@bakerlaw.com

Isabelle Corbett Sterling
BAKER & HOSTETLER LLP
Transamerica Pyramid Center
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
isterling@bakerlaw.com

Teresa Goody Guillen
Katherine L. McKnight
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 100
Washington, D.C. 20036
tgoodyguillen@bakerlaw.com
kmcknight@bakerlaw.com

**YOUNG CONAWAY STARGATT
& TAYLOR, LLP**

*/s/ Robert M. Vrana*
James M. Yoch, Jr. (Bar No. 5251)
Robert M. Vrana (Bar No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6726
jyoch@ycst.com
rvrana@ycst.com

Thomas G. Hentoff (*pro hac vice*)
Nicholas G. Gamse (*pro hac vice*)
Tiffany Keung (*pro hac vice*)

Ian M. Swenson (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
(202) 434-5000
thentoff@wc.com
ngamse@wc.com
tkeung@wc.com
iswenson@wc.com

*Counsel for Defendants*