IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SUN, YUCHEN JUSTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 25-1007 (CFC) |
| v. | ) | |
| | ) | |
| BLOOMBERG, L.P., & | ) | |
| BLOOMBERG, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S ANSWERING BRIEF
IN OPPOSITION TO DEFEDANTS' MOTION TO DISMISS**

Dated: October 23, 2025

BAKER & HOSTETLER LLP
Jeffrey J. Lyons (#6437)
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
(302) 407-4222
jjlyons@bakerlaw.com

Teresa Goody Guillén
Katherine L. McKnight
1050 Connecticut Avenue, NW, Suite 1100
Washington, D.C. 20036
(202) 861-1630
tgoodyguillen@bakerlaw.com
kmcknight@bakerlaw.com

Isabelle Corbett Sterling
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
(415) 659-2606
isterling@bakerlaw.com
*Attorneys for Plaintiff Yuchen Justin Sun*

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................................1

II.   STATEMENT OF FACTS ..........................................................................2

III.  ARGUMENT................................................................................................3

      A.   Standard of review................................................................................3

      B.   Choice of Law .....................................................................................4

      C.   Mr. Sun States a Claim for Public Disclosure of Private Facts ..........11

           1.   It is uncontested that Mr. Sun's allegations satisfy the first two
                elements of his claim. .............................................................11

           2.   Mr. Sun satisfies the third prong of his claim by alleging facts
                demonstrating that Bloomberg's disclosure would be offensive
                and objectionable to a reasonable person. ................................12

           3.   Mr. Sun's Complaint alleges facts establishing the final element
                of his claim, that the information Bloomberg disclosed is not of
                legitimate public concern.........................................................15

      D.   Mr. Sun States a Claim for Promissory Estoppel................................17

IV.   CONCLUSION............................................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Barrera v. Monsanto Co.*,
   2016 WL 4938876 (Del. Super. Sept. 13, 2016) ................................................10

*Berg Chilling Sys., Inc. v. Hull Corp.*,
   435 F.3d 455 (3d Cir. 2006) ...................................................................................5

*Chiaravallo v. Middletown Transit Dist.*,
   561 F. Supp. 3d 257 (D. Conn. 2021).....................................................................15

*Chrysler Corp. (Delaware) v. Chaplake Holdings, Ltd.*,
   822 A.2d 1024 (Del. 2003) ....................................................................................17

*Cohen v. Cowles Media Co.*,
   501 U.S. 663 (1991)...........................................................................................17, 18

*Connelly v. Lane Constr. Corp.*,
   809 F.3d 780 (3d Cir. 2016) ..................................................................................20

*Focus Financial Partners, LLC v. Holsopple*,
   241 A.3d 784 (Del. Ch. 2020) .................................................................................8

*Franklin Prescriptions, Inc. v. The New York Times Co.*,
   267 F. Supp. 2d 425 (E.D. Pa. 2003).....................................................................10

*Frey v. Minter*,
   829 F. App'x 432 (11th Cir. 2020) ......................................................................9, 10

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974)...............................................................................................17

*Grove v. Dun & Bradstreet, Inc.*,
   438 F.2d 433 (3d Cir. 1971) ..................................................................................15

*Grubbs v. Univ. of Del. Police Dep't*,
   174 F. Supp. 3d 839 (D. Del. 2016).......................................................................11

*King v. Hildebrandt*,
   331 F.2d 476 (2d Cir.1964) ....................................................................................9

*Kinsey v. New York Times Co.*,
991 F.3d 171 (2d Cir. 2021) ...................................................................9

*Kruzits v. Okuma Mach. Tool, Inc.*,
40 F.3d 52 (3d Cir. 1994) ...................................................................4, 5

*Levin v. McPhee*,
917 F. Supp. 230 (S.D.N.Y. 1996), *aff'd*, 119 F.3d 189 (2d Cir. 1997) .............9

*Liggett Grp. Inc. v. Affiliated FM Ins. Co.*,
788 A.2d 134 (Del. Super. 2001)..........................................................7, 8

*Miller v. Monsanto Co.*,
2025 WL 2614048 (D. Del. Sept. 10, 2025).........................................4

*N. Am. Phillips Corp. v. Aetna Cas. & Sur. Co.*,
1991 WL 190305 (Del. Super. Ct. Aug. 30, 1991)............................................11

*Powell v. Subaru of Am., Inc.*,
502 F. Supp. 3d 856 (D.N.J. 2020) .........................................................11

*Ruzicka v. Conde Nast Publications, Inc.*,
999 F.2d 1319 (1993).............................................................................18

*Sisler v. Gannett Co.*,
516 A.2d 1083 (N.J. 1986) ...................................................................16

*State Cap. Title & Abstract Co. v. Pappas Bus. Servs., LLC*,
646 F. Supp. 2d 668 (D.N.J. 2009) ....................................................21

*Smith v. Citizen Bank*,
2025 WL 2676697 (D. Del. Sept. 18, 2025)..................................3, 4

*Trevino v. Merscorp, Inc.*
583 F. Supp. 2d 521 ( D. Del. 2008)....................................................21

*Triestman v. Slate Grp., LLC*,
2020 WL 1450562 (D. Del. Mar. 25, 2020) ......................................10

*Turner v. Lipschultz*,
619 A.2d 912 (Del. 1992) ...................................................................6, 7

iii

*Vichi v. Koninklijke Philips Elecs., N.V.*,
    85 A.3d 725 (Del. Ch. 2014) ...................................................................5

*Warren Gen. Hosp. v. Amgen Inc.*,
    643 F.3d 77 (3d Cir. 2011) ....................................................................3

**Other Authorities**

Christina Koningisor, The De Facto Reporter's Privilege,
    127 Yale L.J. 1176 (2018) ...................................................................16

Federal Rules of Civil Procedure 12(b)(6) ...........................................1, 9

Restatement (Second) of Conflict of Laws (1971) ...................................6

Plaintiff Yuchen Justin Sun ("Plaintiff" or "Mr. Sun"), through his undersigned counsel, hereby submits this brief in opposition to the Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) (the "Motion") filed by Defendants Bloomberg, L.P. and Bloomberg, Inc. (together, "Bloomberg" or "Defendants").

## I.    <u>INTRODUCTION</u>

Mr. Sun initiated this action against Bloomberg for public disclosure of private facts and promissory estoppel, pleading facts in his First Amended Complaint ("FAC") that establish the liability of Defendants. Bloomberg now moves to dismiss Mr. Sun's claims on three grounds, each of which require factual development before this Court will be in a position to rule dispositively.

*First*, Defendants conclude that New York law applies to this dispute without engaging the fact-intensive standard this Court is obligated to apply when faced with a choice of law. The FAC includes well-pleaded facts indicating three different options for a choice of law: Delaware, Hong Kong and New York.

*Second*, for Mr. Sun's public disclosure of private facts claim, Defendants assume an agreement of confidentiality did not exist at the time Mr. Sun shared his private and sensitive information, but that is not what is pleaded in the FAC. Nowhere does Bloomberg cite a case for the proposition that a journalist may

promise confidentiality in order to access private and sensitive information and then use "public interest" as a shield against liability for breaching that agreement.

*Third*, whether an agreement exists will require a weighing of factual assertions, including allegations in the FAC that an agreement existed and caused reliance. This Court already has acknowledged this point in its denial of Mr. Sun's motion for temporary restraining order. *See* D.I. 39 at 4–5. Each of these bases for Defendants' Motion are not yet ripe because discovery and factual development have not yet occurred, let alone concluded. Defendants' Motion should therefore be denied.

## II.    **STATEMENT OF FACTS**

The assertions in Mr. Sun's FAC (D.I. 30) form the basis for assessing Defendants' Motions. Below is a brief overview of the relevant facts.

Mr. Sun resides in Hong Kong. D.I. 30 ¶6. He is a successful entrepreneur in the blockchain and cryptocurrency industry *Id.* ¶2. He has accumulated a sizable portfolio of various cryptocurrencies and other valuable assets. *Id.* Earlier this year, employees of Defendants approached Mr. Sun about listing him in Bloomberg's online "Billionaire Index," which is a ranked list of the world's richest people. *Id.* ¶¶3, 13–15. Bloomberg told Mr. Sun that Bloomberg would need to verify his assets to confirm his net worth. *Id.* ¶¶3, 16. Prior to agreeing to participate, Mr. Sun received explicit assurances from Bloomberg "that his highly confidential, sensitive,

2

private, and proprietary financial information, particularly related to his cryptocurrency holdings, would be held 'strictly confidential' and was provided to Bloomberg for the sole purpose of verifying his total net worth." *Id.* ¶¶4, 17–19. Based on these express promises of confidentiality, as well as his own review of the profiles of others featured in the Billionaires Index to confirm the level of detail reported, Mr. Sun agreed to participate in the Billionaire Index and provide Bloomberg with his sensitive financial information. *Id.* ¶¶4, 20, 22–29. Despite its express promises of confidentiality, Bloomberg published Mr. Sun's specific financial holdings—in granular detail—alongside material misstatements about Mr. Sun's holdings. *Id.* ¶¶31–37, 54–58. These disclosures have caused harm to Mr. Sun, including but not limited to, an invasion of privacy, as well as subjecting Mr. Sun to a significant risk of theft, hacking, kidnapping, and bodily harm to him and his family. *Id.* ¶¶5, 39–42, 55, 58.

## III.   <u>ARGUMENT</u>

### A.   **Standard of review**

"[A] motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011); *see also Smith v. Citizen Bank*, 2025 WL 2676697, at *1 (D. Del. Sept. 18, 2025 ("A Rule 12(b)(6) motion may be

granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations 'could not raise a claim of entitlement to relief.'" (citation omitted)).

**B.    Choice of Law**

Defendants argue that a choice of law analysis is necessary in this action because "Delaware recognizes the claim of public disclosure of private facts, but no such claim exists under New York state law." D.I. 41 at 6; *see also* D.I. 30 ¶¶61–68 (Mr. Sun's amended complaint, asserting a cause of action for "Public Disclosure of Private Facts"). Defendants' arguments acknowledge that the jurisdiction with the "most significant relationship" to the dispute applies (D.I. 41 at 7), but Defendants take an overly narrow view of the facts as currently known to require that ***either*** Delaware or New York law applies. To the contrary, it is premature to determine which jurisdiction's law applies, and fact discovery may well show that the law of Delaware or a foreign jurisdiction (Hong Kong) applies.

A federal court sitting in diversity applies the substantive law of the forum state in which it sits, including the forum state's choice of law rules. *Miller v. Monsanto Co.*, 2025 WL 2614048, at *2 (D. Del. Sept. 10, 2025) ("Because this Court sits in diversity, it applies Delaware choice of law rules."); *Kruzits v. Okuma*

*Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) ("A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state.").

Delaware's choice of law doctrine starts with a two-part inquiry. *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 772 (Del. Ch. 2014). "First, the Court must 'compare the laws of the competing jurisdictions to determine whether the laws actually conflict on a relevant point.'" *Id.* at 773. If the competing laws would yield the same result, then there is no "genuine conflict" and a choice of law analysis is unnecessary. *Id.* Where there is an actual conflict, the court applies the "most significant relationship" test to determine which jurisdiction's laws to apply. *See id.*; *see also Berg Chilling Sys., Inc. v. Hull Corp*., 435 F.3d 455, 462 (3d Cir. 2006) ("Because choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case[.]").

As to the first inquiry, although the laws of Delaware and New York may present an actual conflict, Bloomberg does not even argue that Hong Kong law does or does not apply, much less whether it presents an actual conflict with Delaware or New York law. Bloomberg instead assumes that there are just two candidate jurisdictions whose laws might govern—Delaware and New York.[1] Bloomberg

---

[1] Bloomberg wrongly claims that Mr. Sun "asserts that Delaware law, not Hong Kong law, applies." D.I. 41 at 9 n.5. Mr. Sun has asserted no such thing. The arguments in Mr. Sun's TRO motion analyzed his claim under Delaware law, but

concedes that Mr. Sun is a Hong Kong citizen (D.I. 41 at 11), and cites several cases reciting the Restatement factors (*see id.* at 7 (citing *Turner v. Lipschultz*, 619 A.2d 912, 914-15 (Del. 1992)), but fails to address the possibility that Hong Kong law applies. Given Bloomberg's failure to address whether Hong Kong law presents any conflict with Delaware (or New York) law, Bloomberg has failed to carry its burden of persuasion on this choice of law point and its motion should be denied.

Assuming for the sake of argument that Bloomberg has satisfied the first inquiry, as for the second inquiry, Delaware courts apply the "most significant relationship" test for claims in tort from the Restatement (Second) of Conflict of Laws (1971) (the "Restatement"). *See Turner*, 619 A.2d at 914–15. Under the Restatement's "most significant relationship" test, a court must undertake a factual and legal analysis involving numerous factors, including:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

---

did not address whether Hong Kong law would apply if it were to have the "most significant relationship" to the underlying dispute. D.I. 19 at 12–16.

*Id.* at 915 (quoting the Restatement).

At this preliminary stage of the litigation, there has been no factual development for the Court to analyze. Instead, there are only the well-pleaded allegations set forth in Mr. Sun's FAC, which the Court is required to accept as true and viewed in the light most favorable to Mr. Sun. Those allegations include that Mr. Sun is a resident of Hong Kong (D.I. 30 ¶6) and that Bloomberg (both entities) are Delaware companies (*id.* ¶¶7–8). Notably absent from the discussion are any allegations that Mr. Sun met with Bloomberg in New York or that the individuals at Bloomberg that communicated with Mr. Sun were located in New York (something Mr. Sun cannot know without discovery).

Bloomberg's fact-based analysis is inappropriate at this stage because it ignores well-pleaded factual allegations to the contrary and concludes that New York law must apply. D.I. 41 at 7–11. A motion to dismiss is not the appropriate vehicle to determine the choice of law, especially where, as here, the "most significant relationship" inquiry depends on an analysis of specific facts and the plaintiff has not had the opportunity to develop facts supporting one jurisdiction or another through discovery. *See Liggett Grp. Inc. v. Affiliated FM Ins. Co.*, 788 A.2d

134, 137 (Del. Super. 2001) (finding choice of law dispute "ripe for determination" after fact discovery was complete).[2]

Although Bloomberg argues that its "strong New York connections outweigh its formation in Delaware" and cites the Restatement comment about a corporation that does "little, or no business" in the place of incorporation (D.I. 41 at 10), there are no facts of record that support that argument. Importantly, there are no facts relating to the scope of Bloomberg's operations in New York, Delaware, and/or Hong Kong such as could relate to the Restatement factors, including how such "strong New York connections," whatever those may be, somehow outweigh the choice to organize entities in Delaware under Delaware law. Mr. Sun is entitled to discovery to determine the scope of Bloomberg's business and connections in Delaware, New York, and Hong Kong, and how that conduct relates to its formation in Delaware and the conduct giving rise to the claims asserted in this action.

Mr. Sun and this court cannot know—without discovery—all of the facts relevant to the choice of law analysis with respect to his claims. Thus, in order to

---

[2] In *Focus Financial Partners, LLC v. Holsopple*, 241 A.3d 784 (Del. Ch. 2020), the court found the choice of law analysis appropriate at the pleadings stage, but only because it highlighted an important public policy contained in a California law that aimed to prevent individual employees from taking on the burden of litigating in another state needlessly. *Id.* at 813–14. No such public policy imperative is present in this case and, in any event, the facts underpinning the "most significant relationship" are disputed.

determine which jurisdiction's law applies, discovery is needed. And that means dismissal at the Rule 12(b)(6) stage is inappropriate.

Bloomberg's citations to *Kinsey*, *Levin*, and *Frey* are distinguishable. All three cases discuss defamation claims—not public disclosure of private fact claims. Further, in *Kinsey*, the court acknowledged that "there is only a presumptive rule that the law of [the] plaintiff's domicile applies." *Kinsey v. New York Times Co.*, 991 F.3d 171, 177 (2d Cir. 2021). When faced with applying New York or D.C. law, the *Kinsey* court chose New York because neither party was domiciled in D.C. and the conduct primarily occurred in New York. Here, Bloomberg is incorporated—and therefore domiciled—in Delaware, and Plaintiff is domiciled in Hong Kong, both of which would have a more significant interest than New York.

In *Levin*, the court simply stated that New York law applies without engaging in the analysis outlined in the Restatement. *Levin v. McPhee*, 917 F. Supp. 230, 236 (S.D.N.Y. 1996), *aff'd*, 119 F.3d 189 (2d Cir. 1997). In support of its conclusion, the *Levin* court cited *King v. Hildebrandt* for the proposition that D.C. law applied where all of the parties were domiciled there ***and*** the conduct occurred there. *Id*. Here, the parties do not share a domicile, and thus the analysis in *Levin* is irrelevant.

In *Frey v. Minter*, the court explained that "the law of the plaintiff's domicile will usually be applied." 829 F. App'x 432, 435 (11th Cir. 2020). The *Frey* court expounded that there, unique circumstances altered the default rule because the

plaintiff suffered greater damage in Georgia, rather than plaintiff's domicile, and the circulation primarily occurred in Georgia. *Id*. Factors warranting deviation from the default rule, however, do not exist in this case.

Further, Bloomberg's invocation of the free speech interests of New York may have application in cases alleging defamation, but they have no relevance in a case alleging promissory estoppel and public disclosure of private facts such as those pleaded here. Moreover, "[e]ven if the conduct causing injury occurred in [New York] where the author [purportedly] lives, [Bloomberg] cites no authority showing that this factor alone overcomes the presumption in favor of the Plaintiff's domicile." *Triestman v. Slate Grp., LLC*, 2020 WL 1450562, at *3 (D. Del. Mar. 25, 2020); *see also Franklin Prescriptions, Inc. v. The New York Times Co*., 267 F. Supp. 2d 425, 432 (E.D. Pa. 2003) (applying law of the plaintiff's domicile because it outweighs the interest that New York has in "protecting its media defendants and providing an environment for the free exchange of ideas"). Moreover, Delaware has a significant interest in this dispute. Bloomberg (both entities) are incorporated and organized under the laws of the State of Delaware, and Delaware has a significant interest in regulating Delaware entities. *See, e.g*., *Barrera v. Monsanto Co*., 2016 WL 4938876, at *8 (Del. Super. Sept. 13, 2016) ("Delaware does have an interest in regulating the conduct of entities incorporated under our State's laws.").

Making a determination on the choice of law is premature at this stage of the case. Mr. Sun is entitled to discovery to develop the facts necessary to present his case to the Court that Delaware or Hong Kong law should apply under the "most significant relationship" test. *N. Am. Phillips Corp. v. Aetna Cas. & Sur. Co.*, 1991 WL 190305, at *3 (Del. Super. Aug. 30, 1991) (allowing parties to complete choice of law discovery); *see also Powell v. Subaru of Am., Inc.,* 502 F. Supp. 3d 856, 875 (D.N.J. 2020) ("The Court notes that 'it can be inappropriate or impossible for a court to conduct [a choice of law] analysis at the motion to dismiss stage when little or no discovery has taken place.'"). Therefore, Defendants' Motion should be denied.

### C.     Mr. Sun States a Claim for Public Disclosure of Private Facts

Mr. Sun has stated a claim for public disclosure of private facts because he has alleged the required elements: (1) public disclosure, (2) of a private fact, (3) which would be offensive and objectionable to the reasonable person, and (4) which is not of legitimate public concern. *Grubbs v. Univ. of Del. Police Dep't*, 174 F. Supp. 3d 839, 861 (D. Del. 2016).

### 1.     It is uncontested that Mr. Sun's allegations satisfy the first two elements of his claim.

Bloomberg does not dispute that Mr. Sun has sufficiently alleged the first two elements—(1) public disclosure (2) of a private fact. Indeed, Mr. Sun alleges the public disclosure by virtue of his inclusion in Bloomberg's Billionaires Index. D.I.

30 ¶36. He has also alleged the element of "a private fact"—that is, his holdings in Tronix, Bitcoin,[3] Ether, and Tether were not publicly available. *Id.* ¶16 (alleging that "the value of specific assets and details related to his ownership of those assets" were "highly confidential, sensitive, private, and proprietary information.").

Bloomberg instead focuses on Mr. Sun's alleged failure to sufficiently plead the third and fourth prongs of his cause of action—that the disclosure would be offensive and objectionable to the reasonable person, and that the disclosure is not of legitimate public concern. D.I. 41 at 12. As discussed below, Bloomberg is wrong.

> 2.   <u>Mr. Sun satisfies the third prong of his claim by alleging facts demonstrating that Bloomberg's disclosure would be offensive and objectionable to a reasonable person.</u>

Mr. Sun has sufficiently alleged that disclosure by Bloomberg is offensive and objectionable to the reasonable person.

---

[3] In the TRO proceedings, this Court and Bloomberg have noted Mr. Sun's post on X dated February 27, 2024, supposedly disclosing his ownership of Bitcoin shares on the HTX platform. D.I. 39 at 8; D.I. 33 at 20. Putting aside that this post is dated a full 18 months prior to Bloomberg's publication of Mr. Sun's holdings, it also addresses only one of the four cryptocurrencies Bloomberg disclosed, and the number of Bitcoin shares is wildly divergent between the X post and the Bloomberg publication. In addition, Bloomberg's publication of incorrect information regarding Mr. Sun's status as a majority holder of Tronix presents new and distinct threats. D.I. 30 ¶¶54–58. The relevant timeframe to evaluate Mr. Sun's claim that Bloomberg's actions exposed him to "legal, financial, and physical threats, including theft, hacking, and kidnapping" is the time of publication, not a year and a half before.

A reasonable person would find the disclosure of their personal financial information in granular detail to be offensive and objectionable when, as alleged, it subjects an individual to "legal, financial, and physical threats, including theft, hacking, and kidnapping." D.I. 30 ¶55. Even more offensive is disclosure of incorrect information. Mr. Sun's FAC alleges that a key part of the Bloomberg profile is incorrect because it falsely attributes to him more Tronix tokens ("TRX") than he actually owns. *Id.* ¶54. Mr. Sun asserts that a "substantial portion of the TRX Bloomberg mischaracterizes as his personal holdings is held in ecosystem-managed reserves and exchange custodial wallets—structures designed to support network stability and safeguard customer assets, rather than any individual's personal wealth." *Id.* Mr. Sun's allegations that the "ecosystem-managed reserves and exchange custodial wallets" are not part of his individual "personal wealth" must be accepted as true for purposes evaluating the Motion. Mr. Sun thus sufficiently alleges facts establishing the third element of his claim for public disclosure of private facts.

To be sure, Mr. Sun's complaint elaborates on why this disclosure of incorrect information is specifically offensive and objectionable: (1) asserting that the disclosure of this incorrect information exposes him to "legal, financial, and physical threats, including theft, hacking, and kidnapping" (D.I. 30 ¶55); (2) asserting that disclosure of incorrect information "undermines trust in the TRON network by

falsely suggesting centralization of control of the blockchain, thereby eroding one of blockchain's core principles: decentralization" (*id.* ¶56); (3) asserting that disclosure of incorrect information "creates the false impression that Mr. Sun can exert significant influence over the price of the cryptocurrency, including manufacturing swings" (*id.* ¶57); and (4) alleging that disclosure of incorrect information about Mr. Sun's centralized control of TRON "erodes TRON users' trust in the blockchain and its native token TRX, discourages entrepreneurs and developers to build on TRON, depriving the network of new ideas and capital, and puts Mr. Sun at even greater risk for theft, hacking, kidnapping, and bodily injury, because bad actors are additionally incentivized to steal from individuals they believe have control over cryptocurrency markets and networks" (*id.* ¶58).

Defendants' attempt to discount the offensiveness of their publication by characterizing their disclosure as "high-level estimates." D.I. 41 at 14. However, Mr. Sun makes specific allegations regarding the effect that Bloomberg's incorrect assertion that he "owns more than 60 billion Tronix" has: regardless of the approximation of that number, the disclosure amounts to an assertion that he owns a majority of Tronix which, as detailed above, has exposed Mr. Sun to specific harms. And, critically, none of what Bloomberg describes as the "widely published more specific information about his cryptocurrency holdings" (D.I. 41 at 16 & n.8), negate the fact that Bloomberg made wildly incorrect assertions about Mr. Sun's TRX

holdings. In any event, whether the disclosure is offensive and objectionable to a reasonable person is a matter for the ultimate fact-finder. *See Chiaravallo v. Middletown Transit Dist.*, 561 F. Supp. 3d 257, 292 (D. Conn. 2021) ("Generally, '[w]hether the matter communicated to the public would be highly offensive to a reasonable person sufficient to support a false light claim presents a question of fact for the trier of fact.'").

For purposes of evaluating Bloomberg's Motion, this Court must accept as true Mr. Sun's allegations that Bloomberg's portrayal of him as a majority owner of TRX is incorrect and false, and Bloomberg's publication has subjected him to "legal, financial, and physical threats, including theft, hacking, and kidnapping." D.I. 30 ¶55. Accepted as true, these allegations support the third element of Mr. Sun's claim for public disclosure or private facts.

3.  <u>Mr. Sun's Complaint alleges facts establishing the final element of his claim, that the information Bloomberg disclosed is not of legitimate public concern.</u>

There is no clear public interest in Mr. Sun's granular Confidential Financial Information. *See Grove v. Dun & Bradstreet, Inc.*, 438 F.2d 433, 436 (3d Cir. 1971) ("We cannot accept the theory that plaintiff's business or credit standing is a matter of 'real public interest.'"). As the FAC makes clear, there is a difference between public interest in a person's general financial standing as compared to granular details sufficient to allow bad actors to reverse engineer and access someone's

private financial information. D.I. 30 ¶¶19–21, 35, 39, 42–48. This is particularly true here, where there is no argument by Defendants that Mr. Sun's granular financial information is somehow relevant to any articulated public interest or alleged wrongdoing. *Cf. Sisler v. Gannett Co.*, 516 A.2d 1083, 1089 (N.J. 1986) (finding the plaintiff's "financial dealings with a company being investigated for questionable loans" was of legitimate public concern because of the "historic and governmental concern with the role and operation of banks, particularly their financial stability" and the information at issue concerned loans issued by a bank to its former president and founder).

Further, there is no legitimate public concern for the media to publish information it obtained under false pretenses from sources after promising confidentiality. Christina Koningisor, *The De Facto Reporter's Privilege*, 127 Yale L.J. 1176, 1180 (2018) ("[T]he most common justification for the reporter's privilege today is that revealing confidential information would cause reporters' sources to dry up. This, in turn, would stem the flow of information to the press— and by extension—to the public."). With respect to this Motion, the Court must credit Mr. Sun's allegations that "Ms. Shen [the Bloomberg reporter] told Mr. Sun that any information Mr. Sun provided to Bloomberg for the purpose of verifying his personal wealth would be kept strictly confidential and would only be used to verify his personal assets for the Billionaires Index profile." D.I. 30 ¶18. Ms. Shen

then egregiously breached her assurance to Mr. Sun by publicizing detailed information regarding his cryptocurrency holdings, including incorrect information about the extent of his TRX holdings and that he owns the majority of its supply. Finally, there is no legitimate public concern in reports of incorrect and false information. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 340 (1974) ("[T]here is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest . . ."). Bloomberg falsely claimed Mr. Sun "owns more than 60 billion Tronix" and that he "controls a majority of its supply" D.I. 30 ¶37.

In sum, Mr. Sun's allegations support his claim for public disclosure of private facts.

### D.    Mr. Sun States a Claim for Promissory Estoppel

Mr. Sun and Bloomberg agree on the elements of a claim for promissory estoppel under Delaware law. *See* D.I. 41 at 16–17 (citing *Chrysler Corp. (Delaware) v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1032 (Del. 2003)). Bloomberg does not dispute that Delaware law applies to Mr. Sun's promissory estoppel claim. *See* D.I. 41 at 16–17.

Courts have previously held publications liable for abandoning promises of confidentiality under theories of promissory estoppel. In *Cohen v. Cowles Media Co.*, plaintiff approached reporters and offered to provide documents relating to a

candidate in an upcoming gubernatorial race on the condition that he remain anonymous. 501 U.S. 663, 665 (1991). The subsequent publications identified plaintiff as the source of the documents and plaintiff was fired by his employer. *Id.* The Court held that plaintiff could pursue his promissory estoppel cause of action, which was not barred by the First Amendment as the doctrine of promissory estoppel is a law of general applicability, and remanded the case to the Minnesota Supreme Court. *Id.* at 670–71.

Shortly thereafter, in *Ruzicka v. Conde Nast Publications, Inc.*, the Court of Appeals for the Eighth Circuit found that a plaintiff could recover compensatory damages where a publication broke its promise of confidentiality. 999 F.2d 1319, 1323 (8th Cir. 1993). There, plaintiff agreed to participate in an interview only upon the assurance that she would not be identified. *Id.* Ultimately, the published article revealed several identifying facts about the plaintiff. *Id.* The Court of Appeals held that, "[w]here the press feels disclosure of identity of a confidential source is valuable to the story and thus disregards its promise, the payment of compensatory damages is . . . simply a cost of acquiring newsworthy material to be published at a profit." *Id.*

Mr. Sun's FAC sufficiently asserts a claim for promissory estoppel. In particular, he asserts that Bloomberg promised to keep his Confidential Financial Information "strictly confidential and would be used to verify his personal assets for

the Billionaires Index profile." D.I. 30 ¶18. And Mr. Sun asserts that it was not a single promise to this effect, but a pattern of consistent, repeated, intentional assurances by Bloomberg, oral and written, to keep Mr. Sun on the path towards Bloomberg's goal—access to Mr. Sun's Confidential Financial Information.[4] He also asserts that it was this promise that led him to disclose his Confidential Financial Information to Bloomberg. This claim, taken as true and in the light most favorable to Mr. Sun, sufficiently alleges the first element (the promise, reasonably expected to induce action) of promissory estoppel. Mr. Sun is entitled to develop a factual record to prove his case, including the discovery of documents within Bloomberg's possession or control that relate to his allegations. This could include internal communications between reporters and editors or others within the Bloomberg entities' ambit that have discussed Mr. Sun's information and/or the normal course of conduct for the Billionaire Index. That this Court found Mr. Sun's claims insufficient to support a TRO does not determine whether those claims are plausible and sufficient at the motion to dismiss stage, where the burden of persuasion and presumption of truth is no longer on Mr. Sun.

---

[4] In its Memorandum Order denying Mr. Sun's Motion for a TRO, this Court wrote that much of the communications between Mr. Sun's team and Bloomberg "appear to concern data security; they do not show clearly that Bloomberg made a promise to refrain from publishing details about Sun's cryptocurrency holdings." D.I. 39 at 6. Read in a light most favorable to Mr. Sun at this stage in the proceedings, those communications are sufficient to support his assertions.

Mr. Sun also sufficiently alleges the second element—that he actually took action in reliance on the promise. Bloomberg's Motion asserts that Mr. Sun "merely recites the legal standard for promissory estoppel," but this ignores the entirety of the FAC, which incorporates by reference, in paragraph 69, all of the pleaded facts into his Count II (Promissory Estoppel). Mr. Sun alleges that he took action in reliance on Bloomberg's promises—he agreed to participate in Bloomberg's Billionaire Index and he made his Confidential Financial Information available to Bloomberg. D.I. 30 ¶24. That is sufficient to show reliance.

Mr. Sun also plausibly alleges the final element of his promissory estoppel claim, that "such promise is binding because injustice can be avoided only by enforcement of the promise." Throughout his FAC, Mr. Sun alleges that a great injustice has been done to him by Bloomberg. In particular, he was lured into divulging to Bloomberg his Confidential Financial Information that was otherwise not publicly available. And he has articulated the personal risks Bloomberg's actions have created—invasion of privacy, risk of theft, hacking, kidnapping, and bodily harm to him and his family. *Id.* ¶¶5, 42, 55, 58.

Mr. Sun's FAC alleges fact sufficient "to raise a reasonable expectation that discover will reveal evidence" to support his claim of promissory estoppel. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (citations omitted). At this early stage, the Court must accept all allegations in the FAC as true and draw

20

all reasonable inferences in the light most favorable to Mr. Sun. When it does so, his allegations concerning promissory estoppel are sufficient to survive dismissal. *See Trevino v. Merscorp, Inc.* 583 F. Supp. 2d 521, 532-33 (D. Del. 2008).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Mr. Sun respectfully requests that the Court deny Bloomberg's Motion to Dismiss Plaintiff's First Amended Complaint. To the extent this Court finds the allegations insufficient, it should allow Mr. Sun leave to amend. *See State Cap. Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 681 (D.N.J. 2009) ("[L]eave to amend generally must be granted unless the amendment would not cure the deficiency.").

Dated: October 23, 2025

BAKER & HOSTETLER LLP

/s/ *Jeffrey J. Lyons*
Jeffrey J. Lyons (#6437)
1201 N. Market Street, Suite 1407
Wilmington, DE 19801
(302) 407-4222
jjlyons@bakerlaw.com

*Attorney for Plaintiff Yuchen Justin Sun*